(33 App. Div. 49.)

### In re LAMPSON'S WILL.

(Supreme Court, Appellate Division, Fourth Department.  July 26, 1898.)

1. DEVISE TO COLLEGES—MEMBERSHIP CORPORATIONS.

Though a college be a membership corporation, and though at one time educational institutions could be incorporated under Acts 1848, c. 319, which by section 6 prohibited any corporation formed under it from taking under a will executed less than two months before testator's death, this is not made to apply to a college organized under the laws of another state, by the membership corporations law of 1895, which repealed all of Acts 1848, c. 319, except section 6, and declared that a membership corpora-·· tion could be created thereunder for any purpose, except one for which a corporation could be created under "any other general law"; there being in existence at the time the university law of 1892, a general law for the incorporation of colleges, which was a substitute for Laws 1882, c. 367, which authorized their incorporation under the act of 1848.

2. DEVISES TO CORPORATIONS—PUBLIC POLICY.

That the membership corporations law of 1895, which repealed Acts 1848, c. 319, for incorporating certain kinds of societies, except section 6, which prohibited any corporation formed under the act from taking under a will made less than two months before testator's death, was not by such exception intended to establish any new policy with regard to the right of corporations to take by will, may be shown by later special laws creating corporations without any restrictions as to power to take by will.

Appeal from surrogate's court, Genesee county.

Proceedings to probate the will of William Lampson, deceased. From a decree of the surrogate (49 N. Y. Supp. 576) admitting the will to probate, Laura Ann Brooks, the contestant, appeals.  Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Myron H. Peck, Jr., for appellant.

William C. Watson, for respondent proponent.

Martin Carey, for respondent Yale University.

ADAMS, J.  The testator, William Lampson, died on the 14th day of February, 1897, at which time he was, and for many years prior thereto had been, a resident of the town of Leroy, in the county of Genesee, where he had amassed a fortune amounting to nearly or quite half a million of dollars.  The value of his real estate at the time of the testator's death was estimated to be about $75,000 to $125,000; and his personal property, $340,000 to $400,000. On the 1st day of December, 1896, which was less than two months prior to his death, the testator made his last will and testament, in and by which he bequeathed to the corporation of Yale College, of which institution he was an alumnus, the sum of $150,000, for the purpose of erecting a memorial building to be known as the "Lampson Lyceum"; and he also devised and bequeathed to the same corporation all the residuum of his estate, with the exception of about $30,000.  Yale College, or "Yale University," as it is now known, was at the date of the execution of the testator's will an educational institution organized and existing under and by virtue of the laws of the state of Connecticut.  The nearest living relative

of the testator is the contestant, an aunt, who resides in the state of Minnesota; and the clear annual income of the property so devised and bequeathed to the corporation of Yale College exceeded the sum of $10,000. There is no controversy respecting the facts above stated; but it is insisted by the learned counsel for the appellant that, when considered in connection with the further fact, which the surrogate was requested, but refused, to find, viz. that the corporation of Yale College was at the execution of the will in question, and is now, a nonstock, benevolent corporation, organized under the laws of the state of Connecticut, for instruction in the arts and sciences and in theology, they establish the correctness of his contention that the bequests to the above-named corporation were in contravention of the public policy of this state, as expressed in its General Statutes, and consequently invalid. What the public policy of a state may be is often difficult of ascertainment; and it was said by the late Judge Story, in the celebrated Girard Will Case, 2 How. 127, that the question, if inquired into, "will be found to be one of great vagueness and uncertainty, and to involve discussions which scarcely come within the range of judicial duty and functions, and upon which men may and will complexionally differ." Perhaps the most concise and satisfactory definition of the term is that employed by one of the distinguished counsel engaged in that case (Mr. Webster), who declared that the public policy of a state is a policy which must be established "either by law, by courts, or general consent." Adopting, then, this definition as our guide in the responsible and delicate task which is set before us, let us see what force there is in the appellant's contention that the bequests to the corporation of Yale College are void, because contrary to public policy.

It is not contended that the testator has contravened public sentiment in making the disposition he has of his estate, for it is a universal and inviolable rule of personal liberty that, so long as he in no way interferes with the rights of others, one may dispose of his own property in such manner as he deems best; and, so far as the policy of the state can be said to be reflected by the sentiment of its people, its tendency has been, is now, and probably always will be, to foster and encourage every educational institution which is designed to promote moral and intellectual advancement. Nor can it be claimed that the courts have evinced any disposition to interfere with the right of the individual to bestow his property upon institutions of this character. Upon the contrary, as was well said in a case where this question was under consideration, "the law allows and encourages such gifts, and those who make them are commended as the benefactors of their race. Such institutions, dotted all over our land, to succor, elevate, educate men, and ameliorate their condition, are distinguishing features of our modern civilization." Earl, J., in Hollis v. Seminary, 95 N. Y. 166, 173. And this language is a correct expression of the views entertained by our court of last resort at the present day. Amherst College v. Ritch, 151 N. Y. 282, 335, 45 N. E. 876.

It being thus made apparent that the claim of the appellant's

counsel is founded upon neither public opinion nor juridical statement, we are brought to the consideration of what we understand to be his principal contention in the case, which is that the policy of the law, as declared by legislative enactments, is to confine testamentary gifts to educational institutions within certain limitations as to time and amount. By chapter 319 of the Laws of 1848 the legislature of this state provided a method by which benevolent, charitable, scientific, and missionary societies consisting of five or more persons might perfect a body politic, which should be capable of taking, receiving, purchasing, and holding real estate, for the purposes of their incorporation, to an amount not exceeding the sum of $50,000 in value, and personal estate, for like purposes, to an amount not exceeding the sum of $75,000 in value, providing the clear annual income of such personal estate should not exceed the sum of $10,000. By section 6 of this act it is provided that:

"Any corporation formed under this act, shall be capable of taking, holding or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatsoever, the clear annual income of which devise or bequest shall not exceed the sum of ten thousand dollars; provided, no person leaving a wife or child or parent, shall devise or bequeath to such institution or corporation more than one-fourth of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid, in any will which shall not have been made and executed at least two months before the death of the testator."

By chapter 51 of the Laws of 1870 this statute was amended so as to embrace within its scope educational institutions, which were permitted to take and hold property not exceeding in value the sum of $1,000,000, and by a later amendment this amount was increased to $2,000,000. Laws 1885, c. 88. But in 1882 it was enacted that no literary or scientific college should be incorporated under the act of 1848, except with the approval of the regents of the university. Laws 1882, c. 367. This act has been amended from time to time in other respects, but it will be unnecessary to refer specifically to these various amendments, inasmuch as it must be conceded that, if the section above quoted has any application to the right of the respondent to take and hold real and personal property, the bequests contained in the will of the testator are invalid, for the reason that such will was executed within two months of the testator's death. It appears, however, that by its charter, as well as by a special enactment of the legislature of this state (Laws 1881, c. 128), the respondent is empowered to take by gift or devise, and to hold and convey, lands, without any limitation as to time or amount; and for this reason the conditions of the act of 1848 cannot, within the principle of repeated adjudications, have any application to the case in hand. Hollis v. Seminary, supra; Amherst College v. Ritch, supra; Preston v. Howk, 3 App. Div. 43, 37 N. Y. Supp. 1079, affirmed 154 N. Y. 734, 49 N. E. 1103; Cole v. Frost, 51 Hun, 578, 4 N. Y. Supp. 308, affirmed 117 N. Y. 656, 22 N. E. 1133; Harris v. Society, 33 Hun, 411; Porter v. Carolin (Sup.) 2 N. Y. Supp. 791; Riley v. Diggs, 2 Dem. Sur. 184.

But it is insisted by the learned counsel for the appellant that

since the decision in Hollis v. Drew the statute law of this state
has undergone a radical change, whereby the policy declared by
section 6 of the act of 1848 has been freed from the limitations
which then encompassed it, and made applicable to educational
and other like institutions which did not formerly fall within the
provisions of that act; and this contention presents the pivotal
question in the case. If we correctly apprehend the ground upon
which the appellant's contention is made to rest, it is that, under
the general statutory revision contemplated by the act of 1889
(Laws 1889, c. 289), the law relative to corporations, which was
formerly fragmentary and imperfect, has been codified, and thus
made more harmonious and comprehensive; that one of the re-
sults of this attempt at revision was the enactment of what is
known as the "General Corporation Law" (Laws 1890, c. 563),
which classified the different kinds of corporations, provided meth-
ods for their formation, prescribed rules and regulations for their
management, and granted certain privileges and powers, which
were general in their character, and available to every organization
which possessed corporate vitality; that among the corporations
within the contemplation of the general law were membership cor-
porations; and that, in furtherance of the plan of the revision
commission, the legislature in 1895 passed what is known as the
"Membership Corporations Law" (Laws 1895, c. 559), and at the
same time repealed all of chapter 319 of the act of 1848, except
section 6; that by retaining this section the legislature clearly
indicated an intention to incorporate the same into the member-
ship corporations law; and that inasmuch as Yale University, al-
though a foreign corporation, would, under the existing laws of
this state, be classified as a membership corporation, its right to
take by gift, devise, or bequest was subject to the restrictions of
that section. After giving to the elaborate and ingenious argu-
ment of the learned counsel the care and consideration which the
importance of the case demands, we find ourselves, for reasons
which will be briefly stated, unable to yield assent to the deduc-
tions which he draws from the premises hereinbefore set forth.
It is probably a fact not to be denied that the corporation of Yale
University is a nonstock corporation; and consequently, when
we attempt to classify it in accordance with the definition contained
in section 2 of the general corporation law, it must be regarded
as either a religious or a membership corporation. Obviously, it
does not belong to the first-mentioned class; and hence, it is ar-
gued, it must, ex necessitate, be a membership corporation. In a
certain sense this is doubtless true, but does it follow that, be-
cause thus classified, it is subject to all the provisions and restric-
tions of the membership corporations law? Perhaps the best test
to apply in order to obtain a satisfactory answer to this question
is to determine whether or not the membership corporations law
provides for the incorporation of educational institutions; or, in
other words, whether Yale University, if it were about to perfect
an organization in this state, would do so under the provisions of
that or some other act. By section 2 of article 1 it is declared

that, subject to certain exceptions, which it is unnecessary to re-
fer to in this connection, "the term membership corporation means
a corporation hereafter incorporated under this chapter, or hereto-
fore incorporated under any law repealed by this chapter; but does
not include a membership corporation created by special law";
and by section 30, art. 2, it is further provided that "a member-
ship corporation may be created under this article for any lawful
purpose, except a purpose for which a corporation may be created
under any other article of this chapter, or any other general law
than this chapter." Now, while, as we have seen, an educational
institution, if purely literary or scientific in its character, could at
one time have been incorporated under the act of 1848, with the
approval of the regents of the university, yet we think it can be
easily demonstrated that at the time of the execution of the tes-
tator's will there was, and still is, in existence a general law which
is designed to provide a method, and the only method, for the in-
corporation of universities and colleges in this state, and that con-
sequently an institution similar in all respects to the respondent
could not secure to itself corporate life by means of the provi-
sions of the membership corporations law, although it might be
classified as a nonstock, membership corporation. As early as
1784 the university of this state was created, and the regents there-
of were empowered to found schools and colleges within any such
part of the state as might seem to them expedient. Laws 1784, c.
51. In 1787 the act of 1784 was re-enacted, with some additional
provisions (Laws 1787, c. 82), among which was one to the effect
that plans of colleges to be founded in this state must first be
approved by the regents, and if, within a reasonable time there-
after, the plans be executed, then the regents, under their seal,
shall declare that the college shall forthwith become incorporated.
By chapter 184 of the Laws of 1853 it was provided that the re-
gents of the university should prescribe the requisites and condi-
tions for the incorporation by them of any institution of learning
pursuant to the power vested in them by the act of 1813, which
contained the same provisions as to the incorporation of colleges
within the state as did the act of 1787. 2 Rev. Laws 1813, p. 260,
c. 59. And the statute of 1853 further empowered the regents to
incorporate universities or colleges, "which, in addition to the pow-
ers vested in them by the regents, shall have the general powers of
a corporation under the Revised Statutes of this state." As has
already been stated, under the act of 1882 no literary or scientific
college could be incorporated under the act of 1848 without the
approval of the regents; and in 1889 the laws relating to the
university of the state were revised and consolidated, and it was
then enacted that the regents might incorporate any college or
other educational institution, which, when so incorporated, "shall
have all the general powers of a corporation with perpetual suc-
cession." Laws 1889, c. 529, tit. 2, § 2. This certainly was a gen-
eral law, and it remained in force and operation until 1892, when
it was again revised, and superseded by what is known as the
"University Law" (Laws 1892, c. 378). By the twenty-seventh sec-

tion of this law, as amended by chapter 859 of the Laws of 1895, it is provided that:

"The regents may, by an instrument under their seal and recorded in their office, incorporate any university, college, academy, library, museum, or other institution or association for the promotion of science, literature, art, history or other department of knowledge, under such name, with such number of trustees or other managers, and with such powers, privileges and duties, and subject to such limitations and restrictions in all respects as the regents may prescribe in conformity to law."

And this section is declared in a note by the revisers to be a substitute for chapter 367 of the Laws of 1882.

Thus, it will be seen that the legislature, in the interests of "higher education," has provided a complete and comprehensive scheme for the incorporation of educational institutions in this state, and one apparently quite as general in its operation as the membership corporations law, which was designed more especially for the incorporation of such associations as cemeteries, boards of trade, and the other corporations specified in the last 10 articles of that law. With this general law in force, providing not only for the incorporation of educational institutions, but also that the trustees of every corporation created for educational purposes, and subject to visitation by the regents, unless otherwise provided by law, or by its charter, may " * * * take and hold by gift, grant, devise or bequest, in their own right, or in trust for any purpose comprised in the objects of the corporation, such additional real and personal property beyond such as shall be authorized by their charter or by special or general statute, as the regents shall authorize within one year after the delivery of the instrument or probate of the will giving, granting, devising or bequeathing such property, and such authority given by the regents shall make any such gift, grant, devise or bequest operative and valid in law." Laws 1892, c. 378, § 34, subd. 5. It is inconceivable that the legislature should enact another general statute to accomplish the same purpose, and incorporate into it the remnant of an old law, the only effect of which would be to prevent corporations organized thereunder from the full enjoyment of the rights and privileges conferred by the general university law. The more reasonable view, in our opinion, is that the legislature, having by the act of 1892 provided a complete and harmonious system for the incorporation of colleges and universities, and for their control and government, and having three years later provided by another law for the incorporation of non-stock societies generally, cannot be deemed to have thereby intended to include within the operation of the later law corporations for the creation of which the earlier statute was more particularly designed. Indeed, the legislature has been careful to declare that such was not its design; for, as has already been stated, the object of the membership corporations law is expressly declared in the statute itself to be the creation of membership corporations for any lawful purpose, except one for which a corporation may be created under "any other general law than this chapter." Laws 1895, c. 559, art. 2, § 30. It would seem to follow, therefore, that, if the university law is the only statute which is designed to provide a

method for the incorporation of institutions for the promotion of "higher education," the contention of the learned counsel that the retention of section 6 of the act of 1848, and its incorporation into the membership corporations law, indicate a design upon the part of the legislature to establish a public policy which shall subject such institutions to its restrictive provisions, cannot be sustained. And, having reached this conclusion, it is perhaps unnecessary to extend our investigation of the subject further; but there is yet another reason why the appellant's contention fails to meet our approval, concerning which it may be well to say a few words.

It was very forcibly suggested in the case of Hollis v. Seminary, supra, that "that cannot be enforced as public policy which the legislature one day prohibits in some cases, and another day permits in other cases"; and it seems to us that the legislature has itself furnished a complete refutation of the proposition that by its failure to repeal section 6 it intended to establish a new or different policy with regard to the right of corporations to take by devise or bequest; for a very casual examination of the Session Laws since 1895 will reveal the fact that many corporations have been created under conditions which clearly indicate the absence of any such general policy. It is urged, however, that the policy of the state in relation to its mortmain laws is to be determined by statutes of general application, and not by special enactments for the creation of particular corporations; and such is undoubtedly the rule. In re McGraw, 111 N. Y. 66, 111, 19 N. E. 233. But the difficulty which here arises is that there is no general statute upon the subject which expressly declares what the policy of the state is. If the university law contained a provision to the effect that no bequest to any corporation created thereunder should be valid, unless contained in a will made at least two months prior to the death of the testator, that would doubtless establish a public policy which would be applicable to all educational institutions which are not expressly excepted from its operation. Or if, in retaining section 6 of the act of 1848, the legislature had incorporated it into the membership corporations law, or had expressly declared that it was designed to apply to corporations generally, this would have been such a declaration of the policy of the state as could not be disturbed by special enactment. But it has done neither. It has simply omitted to repeal the section, and we are asked to infer from this circumstance that it was the intention of the legislature to make a radical change in the policy of the state. In these circumstances, we take it that the intention of the legislature may be gathered from its special enactments, as well as from any other circumstances, which, at the best, are simply inferential in their character. But, without pursuing the subject further, it is only necessary to add what has already been intimated, that in our opinion the bequests to Yale University contained in the will of the testator are valid, and that, consequently, the decree of the surrogate should be affirmed.

Decree of the surrogate of Genesee county affirmed, with costs to the respondent, payable out of the estate. All concur.