In the Matter of the Probate of the Last Will and Testament of WILLIAM LAMPSON, Deceased.

LAURA ANN BROOKS, Contestant, Appellant; YALE UNIVERSITY and BUTLER WARD, Executor, etc., Respondents.

1. PUBLIC POLICY. The public policy of the state is evidenced in the public acts of its legislative body, and is defined and applied in the decisions of its courts.

2. BEQUEST TO EDUCATIONAL INSTITUTION BY WILL MADE WITHIN TWO MONTHS OF TESTATOR'S DEATH. The legislation of the present time evidences no intention to condemn as void, as against public policy, a testamentary gift to an educational institution, contained in a will executed within two months of the testator's death.

3. TESTAMENTARY GIFT TO FOREIGN UNIVERSITY — WILL MADE WITHIN TWO MONTHS BEFORE DEATH. A testamentary gift to an educational institution of another state is not made invalid by the fact that the will was not executed at least two months before the testator's death, as required by section 6 of chapter 319 of the Laws of 1848, in case of gifts by will to corporations formed under that act, since that section, although pre-

served from repeal by the legislature, on repealing the remainder of that act, by the Membership Corporation Law (L. 1895, ch. 559), is not thereby extended in its application to any other corporations than those formed under the act repealed.

*Matter of Lampson,* 33 App. Div. 49, affirmed.

(Argued January 12, 1900; decided January 23, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered upon an order made July 26, 1898, which affirmed a decree of the surrogate of Genesee county, admitting to probate the will of William Lampson, deceased, and deciding that certain bequests to Yale College, contained therein, were valid.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Myron H. Peck, Jr.,* for appellant. The surrogate erred in refusing to find as requested, that the corporation of Yale College was a non-stock benevolent corporation. (*Matter of Vassar,* 127 N. Y. 1; 3 R. S. [9th ed.] 974, § 3; *Matter of McGraw,* 111 N. Y. 66.) The various acts of the legislature indicate a general public policy of the state in reference to restricting devises and bequests made to corporations of a particular class. (*Fairchild* v. *Edson,* 154 N. Y. 199; *Johnson* v. *H. R. R. R. Co.* 49 N. Y. 455; *Lefevre* v. *Lefevre,* 59 N. Y. 434; *Matter of Conner,* 44 Hun, 424; *P. T. Co.* v. *Smith,* 82 Hun, 494; *Matter of Kavanagh,* 125 N. Y. 418; *White* v. *Howard,* 46 N. Y. 144; *Cross* v. *U. S. T. Co.,* 131 N. Y. 330; *Hobson* v. *Hale,* 95 N. Y. 588; *Miller* v. *Campbell,* 140 N. Y. 457.) The power of corporations to take real estate is limited by the law of 1860, which limits the power to give in certain cases, and by the act of 1848, which limits the power to receive and the power to give to corporations like Yale College. (*Edson* v. *Bartow,* 154 N. Y. 199; *P. T. Co.* v. *Smith,* 82 Hun, 494; *Beekman* v. *People,* 27 Barb. 260; *Stephenson* v. *Short,* 92 N. Y. 433; *Kerr* v. *Dougherty,* 79 N. Y. 327; *Lefevre* v. *Lefevre,* 59 N. Y. 434.) The attempted bequest was void, although the testator did not

leave a wife, child or parent, and the contestant may raise the question. (*Stephenson* v. *Short*, 92 N. Y. 433.)

*Martin Carey* and *Wilson S. Bissell* for respondent, Yale University. In the absence of any positive statutory enactment to that effect, the gifts to Yale University, contained in the will in question, are not against public policy. (*Hollis* v. *D. T. Seminary*, 95 N. Y. 166; *Harris* v. *A. B. H. M. Society*, 33 Hun, 411; *Riley* v. *Diggs*, 2 Dem. 184; *Sherwood* v. *A. B. Society*, 1 Keyes, 565; *Harris* v. *A. B. Society*, 4 Abb. [N. S.] 421; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Porter* v. *Carolin*, 19 N. Y. S. R. 707; *Cole* v. *Frost*, 51 Hun, 578; *Amherst College* v. *Ritch*, 151 N. Y. 334.) An institution of the character and scope, and with the powers, functions and attributes of Yale University, was not contemplated by, nor could such an institution have been incorporated under chapter 319 of the Laws of 1848; nor at the time of Mr. Lampson's death, nor since, could such an institution have been incorporated under the provisions of the Membership Corporation Law. (*People* v. *Cothran*, 27 Hun, 344; *People* v. *Gunn*, 96 N. Y. 317.) The repeal of every section of the act of 1848, except section 6, does not give to the dismembered portion a more extended meaning and application than when it was originally enacted, or when it stood as a part of a completed law. (Endlich on Interp. Stat. §§ 49, 50; *Bank for Savings* v. *Field*, 70 U. S. 495; *Ex parte Crow Dog*, 109 U. S. 572.) The public policy of this State is found in special as well as in its general laws. Counsel for the contestant is in error in claiming that public policy is to be found only in general laws, and that special laws granting charters to favored institutions are not to be considered in determining this question. (*Hollis* v. *D. T. Seminary*, 95 N. Y. 166; *Amherst College* v. *Ritch*, 151 N. Y. 333.)

*William C. Watson* for respondent, Butler Ward.

GRAY, J. This proceeding was instituted in the Surrogate's Court for the probate of the last will and testament of Wil-

liam Lampson, who died on February 14th, 1897, in the village of Le Roy, in this state. His will had been executed on December 21st, 1896, and by its provisions all of his real and personal estate, which amounted to nearly $500,000, in value, was given to Yale College, excepting a few gifts of the value of about $30,000. Yale College, or as it is now, Yale University, is an educational institution, organized and existing under the laws of the state of Connecticut. It had capacity to acquire property by bequest or devise, and, by chapter 128 of the Laws of 1881 of this state, it was enabled " to take by gift or devise, and to hold and convey lands in this state." The testator left neither wife, nor child, nor parent, and his only next of kin was an aunt, who appeared in the present proceeding and contested the validity of the will upon various grounds; only one of which is pressed, viz.: that the will was executed less than two months prior to the decease of the testator and, therefore, being contrary to the statute, was void, in so far as the gift to Yale College was concerned. Both in the Surrogate's Court and at the Appellate Division, the testamentary disposition in favor of the college has been sustained and the contention of the appellant, as it is brought to this court, is, in substance, that section six, of chapter 319, of the Laws of 1848, was in force at the time of the making of this will, as a general law affecting and restricting the power of such corporations to take by devise or bequest, and, as such, evidenced a public policy of the state, which the courts should enforce against foreign corporations. Section six reads as follows: "*Any corporation formed under this act shall be capable of taking, holding, or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament* of any person whatsoever, the clear annual income of which devise or bequest shall not exceed the sum of $10,000; provided, no person leaving a wife or child or parent, shall devise or bequeath  *  *  *  more than one-fourth of his or her estate,  *  *  *  and *no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death*

*of the testator.*" The italicised portion of the section forms the basis of the contention.

It is conceded by the appellant that, if the testamentary disposition in question had been made prior to the revision of the General Laws of this state, which commenced with the enactment of the General Corporation Law, in 1891, the case of *Hollis* v. *Drew Theological Seminary*, (95 N. Y. 166), would have conclusively applied in favor of its validity. In that case, the testator's will was executed less than two months before his death and by its terms bequests were made to the Drew Theological Seminary, a scientific and educational corporation chartered under the laws of the state of New Jersey, and to the Wesleyan University, a similar corporation chartered under the laws of Connecticut. The action was brought to have the validity of these bequests judicially determined and the plaintiff claimed that they were void under section six of the act of 1848, now in question. It was held by this court, with reference to the section, that it had exclusive reference to corporations formed under the act and, as there was no such prohibition in the charters of the legatees, the bequests could not be condemned by the letter of any statute. In the course of the opinion, the question was elaborately discussed whether, as the plaintiff had claimed, the section indicated such a general policy of the state as to bring the bequests within the condemnation of the court. It was observed that it was not against public policy to allow gifts to charitable, benevolent, scientific, or educational institutions and that it was just as praiseworthy to give to them by will within two months before the testator's death, as at an earlier date; but, in order that testators, with death imminent, might not be unduly influenced to give improvidently, and in disregard of the claims of near relatives, the legislature had devised the limitations in the act of 1848. There was no policy, it was further observed, outside of the statute, which condemned such gifts and foreign corporations coming into this state, for any purpose within their chartered powers, would not be subject to the operation of the statute. There was no public

policy indicated; because the limitations in section six were not applied to all similar corporations. Numerous corporations of like nature had been chartered under special acts prior to, and since, the act of 1848, without its limitations. If the institutions in question in that case, it was said, had been domestic corporations, the two months' limitation of the act would not have been applied to them and so it could not be applied to them as foreign corporations. In his opinion, Judge EARL remarked: "If there were a general law in this state that no bequest to any of such corporations should be valid, unless contained in a will made at least two months before the death of the testator, that would indicate a general public policy which the courts of this state would enforce against foreign corporations which might come into this state, although such a limitation was not imposed by the laws creating them."

It is upon that remark, in the opinion in *Hollis* v. *Drew Seminary*, that the contestant finds a foundation for the present contention. It is argued that there is now a general law in this state, which imposes the limitations of section six of the act of 1848 upon all such corporations, and which, thus, is declarative of a general public policy of the state with respect to them, and that, therefore, the courts should enforce these statutory limitations against foreign corporations, however free their charters may be from any restriction in the acquisition of property by testamentary gift. By the General Corporation Law of 1891, it was provided that every corporation has power, though not specified in the law of its incorporation, to acquire by devise or bequest such property as the purposes of the corporation shall require, " subject to such limitations as may be prescribed by law." It defined corporations and stated that a non-stock corporation shall be either a religious corporation, or a membership corporation. Subsequently, in 1895, the legislature enacted the Membership Corporation Law. Until the enactment of that law, the act of 1848 had not been repealed; but its repeal was then accomplished. By section 147, it was provided that of the laws enumerated in a schedule annexed such portions as were there specified were

repealed. Turning to the schedule annexed to this law, we find that all of the act of 1848 in question was repealed, except section six. The reservation of section six from repeal, it is now claimed, left it in full force for the purpose, not only of continuing its limitations upon those corporations which were formed under the act of 1848, but, also, of imposing them upon all others to which it might be made applicable. Having become a part of a law, which put all domestic corporations upon an equal footing, it was a general limitation upon them and, therefore, was within the purview and intent of the General Corporation Law of 1891; which, in empowering every corporation as such to acquire property by devise or bequest, subjected it to such limitations as may be prescribed by law. The appellant's argument must rest upon an assumption that the Membership Corporation Law covered the incorporation of colleges, universities and such higher educational institutions and subjected all such, in their right to acquire property by testamentary gift under the General Corporation Law, to the limitations of section six of the act of 1848, which had become a provision of the Membership Corporation Law.

The assumption might be questioned. Section 30 of the Membership Corporation Law provides that " a membership corporation may be created under this article for any lawful purpose, except a purpose for which a corporation may be created under any other article of this chapter, or any other general law than this chapter." The University Law had been enacted in 1892 and appears to have repealed all of the amendments of the act of 1848, by which its scope was extended to the incorporation of literary or educational institutions. It made provision for the incorporation of all institutions of higher education in this state and consolidated prior general laws, relating to the incorporation of institutions of learning. It might be said, therefore, that it was a general law, falling within the exception of section 30, and, being without restrictions as to capacity to take, could be resorted to upon the question of the state's policy. But if we should admit the assumption of the appellant to be correct, the argu-

ment must still fail. The act of 1848, except so far as its amendments may have been repealed by the University Law, continued in force down to the time of the enactment of the Membership Corporation Law. Thereafter, all incorporations authorized by the act of 1848 were to be effected under the general law. It was, obviously, necessary that previous general, or special, laws, the provisions of which had been consolidated or incorporated in the general law, should be repealed; but it was, also, proper and it was, evidently, the intention of the legislature that, in so far as societies, incorporated previous to the enactment of the general law, were subject to the limitations and restrictions contained in section six of the act of 1848, they should not be relieved therefrom. The effect of excepting section six from repeal was not to incorporate it as a part of the Membership Corporation Law, or to give to it a more extended application than it originally had, but to preserve it upon the statute book in its application to corporations formed under the act of which it was a part. Its very language indicates that; for it refers to " any corporation formed under this act" and that can only mean the act of 1848. The act thus referred to had been repealed and no incorporation could be effected under its provisions in the future. To ascertain, therefore, the purpose and meaning of the section it was necessary to have resort to the act itself. The very position of the section, isolated in a schedule annexed to the statute, evidences its exceptional character; that is to say, that it is an exception to the general operation of the statute and that it is preserved for a special purpose. The provision of the section was general, only in the sense that it applied to all corporations organized under the act of 1848. It is very evident, in considering this schedule, which enumerates a great number of laws from 1796 to 1894 and preserves portions of many from repeal, that the legislature intended that societies formed prior to the enactment of the Membership Corporation Law should be left subject to such restrictions and limitations, as were contained in the portions of laws saved from repeal. Had it been the legislative intent that

future corporations, generally, should be subject to such limi-
tations as had existed in the past, it would, naturally and
appropriately, have been expressed in the body of the statute.
The provision of the General Corporation Law upon which
the appellant relies, as restricting the acquisition of property
by such limitations as might be prescribed by law, (Sec. 11),
if it is to be referred, with respect to corporations organized
under the Membership Corporation Law, to the schedule
thereto annexed, would be quite confusing; if not meaning-
less, as the respondent's counsel pertinently suggests, in,
apparently, making applicable to every corporation authorized,
whatever its scope or nature, all other unrepealed sections
similar to section six in the various laws repealed.

I, therefore, reach the conclusion, without any hesitation,
that section six of the act of 1848 is no more of general applica-
tion to-day, than it was when the act stood unrepealed. Its
operation is confined to corporations formed under that act
and *Hollis* v. *The Drew Seminary*, as an authority upon its
construction, is unaffected.

No different public policy is manifest from the Membership
Corporation Law. The public policy of the State is evidenced
in the public acts of its legislative body and is defined and
applied in the decisions of its courts. We have no such evi-
dence in the mere reservation of a portion of a law, by which
those limitations are maintained upon corporations, which
entered into their contract with the state. It is better to
adhere to the plain language of the law than to resort to the
unsafe ground of inference, or of public policy. The Mem-
bership Corporation Law indicates no general public policy
unfavorable to institutions of the character of this plaintiff, or
of any other character, which appeal to the benefactions of
men in their desire to improve the conditions of society by
educating and elevating its members. It would be a reproach
to the state, if such a policy could be attributed to it and, in
the absence of broad legislation making such an inference
irresistible, there is no warrant for it. I find no ground in
any legislation of the present time for saying that testamentary

gifts made within two months of the decease of the testator are against public policy. I should strongly doubt that the same reasons existed now, which in earlier times seemed to justify the imposition of such a restriction upon testamentary dispositions in favor of institutions established for the temporal or spiritual welfare of men.

The importance of the question has justified a further discussion, which, otherwise, might have been omitted, in view of the elaborate and able opinions delivered by the surrogate and at the Appellate Division.

The judgment should be affirmed, with costs to the respondent Yale College, payable out of the estate.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment affirmed.