## FALVEY v. WOOLNER.

(Supreme Court, Appellate Division, First Department. April 25, 1902.)

1. CONTRACTS—ACTION FOR BREACH—DEFENSES — BREACH OF SIMULTANEOUS CONTRACT.

Plaintiff's assignor, a liquor dealer, made a contract with a distillery corporation in which he was a stockholder, whereby the corporation was to furnish him proof spirits at a certain price. Thereafter defendant purchased the distillery, and assumed the contract with the liquor dealer, entering into a contract with him to that effect. Simultaneously with the execution of the purchase contract between defendant and the distillery company, they made another contract, of which the liquor dealer had knowledge, and to which he assented, he being an active participant in the negotiations for sale to defendant, whereby the distillery company agreed that certain of its stockholders would not go into the distillery business within a certain radius of the one sold, and this contract was the inducement for the purchase by defendant. *Held*, that the breach of the second contract was a good defense to the enforcement of the contract with plaintiff's assignor which defendant had assumed.

2. SAME—SUFFICIENCY OF ANSWER—CONTRACT TO ESTABLISH MONOPOLY—PUBLIC POLICY.

Defendant purchased a foreign distillery, and assumed its contract to furnish plaintiff's assignor with spirits. Plaintiff's petition recited that defendant's purchase contract was made with intent to transfer it to a corporation which was endeavoring to establish a monopoly throughout the United States, and that such transfer was made. The answer also alleged this, and averred that plaintiff's assignee knew of this purpose, and that the contract assumed by defendant was a part of the sale transaction between him and the monopoly corporation. *Held* that, regardless of the lex loci contractus, the answer sufficiently showed that the contract for the sale of the distillery was against the public policy of the forum state, and, the contract assumed by defendant being dependent upon the sale contract, such answer stated a sufficient defense to the enforcement of the contract assumed by defendant.

3. SAME—SUFFICIENCY OF ANSWER—ELECTION TO HOLD DEFENDANT'S ASSIGNEE RESPONSIBLE.

Defendant purchased a distillery, and assumed its contract to furnish spirits to plaintiff's assignor, which contract was subject to renewal at the option of such assignor. Plaintiff sued defendant for failure to furnish such spirits, reciting in his petition that defendant had purchased the distillery for a certain corporation, etc. The answer alleged that defendant sold the distillery to the corporation, notifying plaintiff's assignor of the sale, and that thereafter he treated such corporation as the party bound to perform the agreement which had been assumed by defendant; that, instead of notifying defendant. he notified the original distillery owner of his election to renew the contract; and that by these acts he released defendant from any obligation assumed by him. *Held*, that the answer was sufficient, as setting up the defense that plaintiff's assignor, with full knowledge of all the circumstances, voluntarily accepted defendant's vendee as the party bound to carry out the obligation assumed by defendant.

4. SAME—SUFFICIENCY OF ANSWER—AMPLIFICATION OF PREVIOUS DEFENSES—DEMURRER.

Where an answer in an action for breach of contract contained several separate defenses, good on demurrer, and a subsequent defense in the same answer failed to state separate facts sufficient to constitute a defense, but alleged that the facts therein stated were associated with other facts antecedently stated in the other defenses, repeating such facts as if they were reaverred in terms, the facts set out in the last defense might be regarded as amplifications or reinforcements of the

prior defenses, and were not demurrable as being insufficient in law to constitute a defense.

Appeal from special term, New York county.

Action by James V. Falvey against Samuel Woolner. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Levy Mayer, for appellant.

P. J. Rooney, for respondent.

PATTERSON, J. This action was brought to recover damages for breach of a contract entered into between the plaintiff's assignors and the defendant. The answer admits the making of the contract, and then sets up five separate affirmative defenses to the cause of action. A demurrer was interposed to these several defenses and each of them. That demurrer was sustained, and from the interlocutory judgment entered thereupon the defendant appeals.

We are not informed of the grounds upon which the learned judge below sustained this demurrer, but, upon an examination of the pleadings, we are satisfied that each of the separate defenses is well pleaded; and, the facts set forth therein being conceded, each of those defenses is available to defeat a recovery by the plaintiff. The substantial averments of the complaint are the following: In November, 1892, Emil Cauffman & Co. were merchants in Philadelphia, dealing in liquors and spirits. At that time there existed in the state of Nebraska a corporation known as the Nebraska Distillery Company of Nebraska City, which corporation was engaged in the business of manufacturing distilled spirits. On June 12, 1891, that corporation and Cauffman & Co. entered into a contract by the terms of which the corporation agreed to sell and ship to Cauffman & Co. every month six car loads of No. 1 high-proof spirits, at a price which should be one cent per gallon less than the net price at which such spirits were sold by another corporation known as the Distilling & Cattle Feeding Company of Peoria; and by the same contract it was agreed that the arrangement should continue until June 12, 1894; Cauffman & Co. having reserved to them the privilege of renewing the contract for a further period of three years upon giving written notice of their intention so to do; such notice to be given prior to May 12, 1894. Thus original contract relations were established between the Nebraska Distillery Company and Cauffman & Co. It is further alleged in the complaint that the defendant Woolner purchased all the property of the Nebraska Distillery Company, and by a specific contract dated November 23, 1892, assumed the performance of the contract made between Cauffman & Co. and the Nebraska Distillery Company, under which contract Cauffman & Co. had been purchasing, and the Nebraska Distillery Company had been delivering to them, six car loads per month of proof spirits at a price one cent less per gallon than the price made by the Distilling & Cattle Feeding Company to its agents and customers. The complaint then avers that when Woolner bought the property of the Nebraska Distillery Company, and made

the contract by which he became substituted as the promising party with Cauffman & Co., the Distilling & Cattle Feeding Company was a corporation the purpose of which was, in effect, to control all distilleries in the United States manufacturing spirits and alcohol, and, in substance, to constitute a monopoly for the manufacture and sale of those articles; and it is also charged that the defendant Woolner, when he made his purchase from the Nebraska Distillery Company, did so with the object and purpose of transferring the same to the Distilling & Cattle Feeding Company. The necessary inference to be drawn from which is that Woolner's purchase was to enable the Distilling & Cattle Feeding Company thus to acquire and control the product and the business of the Nebraska Distillery Company, which purpose it is substantially alleged in the complaint was effectuated by an assignment made by Woolner of his acquisition of the property of the Nebraska Distillery Company to the Distilling & Cattle Feeding Company in December, 1892. The complaint then alleges that after a certain date Woolner ceased to perform his contract, and refused to do so, and that Cauffman & Co, have kept and performed all the conditions required by the contract on their part to be performed. After other allegations in the complaint not material at present, the plaintiff proceeded to claim that by the refusal of the defendant to perform the contract, and make shipments in the manner required thereby to the plaintiff's assignors, the latter sustained great loss in their business, and that, if the contract had been performed by Woolner in accordance with its terms, large profits would have accrued to Cauffman & Co. From these allegations it is made plainly to appear that the defendant Woolner bound himself to the performance of the contract made by the Nebraska Distillery Company with the plaintiff's assignors.

The first affirmative defense relied upon by the defendant is that contemporaneously with his purchase from the Nebraska Distillery Company there was made another contract, which entered into and was part of the consideration given by the Nebraska Company to him, that various persons interested in the corporation (being its officers and some of its stockholders) should not engage in the business of manufacturing spirits and alcohol for a certain time within a radius of 1,000 miles of Nebraska City, in the state of Nebraska. It is expressly alleged in the answer that it was part of the consideration upon which the defendant made the purchase that all of its stockholders should and would enter into a written agreement to refrain from engaging in business in the manner indicated; that it was expressly agreed that such a covenant was to be part of the consideration passing to Woolner for the purchase; and that, without that agreement, Woolner would not have made the purchase. It is then further alleged that at that time, and prior thereto, Cauffman was and had been a stockholder of the company, was well acquainted with all of its affairs, was at all times in close relations with the officers and directors of the company, was an active party in the negotiations leading up to the sale of the property to Woolner, and thus was not only an active participant in the transaction

which ended in the purchase of the property by Woolner, but was an assenting party to the making of that promise and agreement by the Nebraska Company. The gist of this defense, therefore, is that side by side with the agreement of purchase made by Woolner was an agreement between him and the assignors of this plaintiff that the business Woolner purchased should be protected from the interference and rivalry of those who were engaged or interested in the Nebraska Distillery Company. It is evidently pleaded as an agreement made for the protection of the purchase. In this defense it is then set forth that the parties whose rivalry was to be guarded against violated the terms of the agreement not to engage in business; that some of them actually did engage in business in competition with Woolner or his assignee as the purchaser of the business of the Nebraska Company, and, at the very time of the negotiations which ended in Woolner's purchase, some of those persons were really making their arrangements to establish another distillery for the manufacture of spirits and alcohol within the interdicted distance from Nebraska City. The whole of this defense, in one aspect, is that of a failure of consideration for the contract upon which the plaintiff sues. We must take the contract for the purchase and the contract for the protection of Woolner (they being simultaneously executed) as being parts of one transaction; and it being shown that Cauffman & Co. were parties to that transaction, or privies thereto, that it was entered into with their knowledge and consent, and was the inducement to Woolner to make the purchase,—the breach of the obligation by which the Nebraska Distillery Company assumed to prevent persons interested in it from engaging in competition with Woolner or his assignee is a good defense to the enforcement of the contract assumed by Woolner with Cauffman & Co.

The second affirmative defense set up in the answer is the illegality of the contract. This defense must be read in connection with the allegations of the complaint to which allusion has already been made. It is, in substance, that Woolner's purchase of the Nebraska Company was in fact made for the Distilling & Cattle Feeding Company, and that the assumption of the obligation of Woolner to perform Cauffman's contract was part of that transaction; that the Distilling & Cattle Feeding Company was, in a few words, engaged in establishing a monopoly and smothering competition, and, to accomplish that end, had bought out competitors from time to time, and that its object was to get into its own hands the control of the business of manufacturing and selling spirits and alcohol; that the purchase of the Nebraska Company made through Woolner was, to the knowledge of Cauffman & Co., made with the intent of promoting and furthering the project of establishing this monopoly. It does not need the citation of authorities to support the proposition that contracts or arrangements or devices for aiding in the establishment of a monopoly, or in general restraint of trade, are obnoxious to the policy of this state. The pleader then proceeds to set out in this second defense that a contract of this character, with its details, is in contravention of certain statutes of the state

of Nebraska. But taking the averments in connection with one which shows the purpose and intent of the Distilling & Cattle Feeding Company to control the production and the market for spirits and alcohol throughout the whole United States, it is obvious that it was the intention of the pleader to set forth—or if it was not his intention, there are enough facts set forth to show—not only that the contract was illegal according to the laws of the state of Nebraska, but that it was against the public policy of the state of New York. Thus irrespective of any question of the recognition and application of provisions of the laws of another state as a matter of defense to an action of this character, we have in this second affirmative defense enough facts stated to show that the contract was of a character the courts of this state will not recognize or enforce. In Re Lampson's Will, 161 N. Y. 519, 56 N. E. 9, it is said that the public policy of the state is evidenced by the public acts of its legislative body, and is defined and applied by the decisions of the courts. How far that policy now extends in this state is shown by the provisions of chapter 690 of the Laws of the State of New York, in its first section (Laws 1899). This contract having been made, to the knowledge of Cauffman & Co., for the purpose of aiding in the establishment of the monopoly of the Distilling & Cattle Feeding Company, the courts of this state will leave the parties where they find them, with respect to the matters embraced within its provisions. Such contracts were considered by the court of appeals in Cohen v. Envelope Co., 166 N. Y. 292, 59 N. E. 906. We deem it to be entirely immaterial where the contract was made. If it infringes the public policy of the state, the courts of the state will not lend their aid to the establishment of rights under such a contract.

The third separate defense contains in its fourth subdivision an allegation that prior to December, 1892, the defendant transferred and assigned all of the property of the Nebraska Distillery Company purchased by him to the Distilling & Cattle Feeding Company, a corporation of the state of Illinois, and notified Cauffman & Co. that the property had been so transferred and assigned to the Distilling & Cattle Feeding Company, and that thereafter Cauffman & Co. treated the Distilling & Cattle Feeding Company as the party bound and obligated to perform the conditions of the contract which the defendant had assumed with Cauffman & Co., and that Cauffman & Co. did thereby discharge and release the defendant from any obligation or liability that may have been assumed by him in the premises. This subdivision of the third affirmative defense is evidently intended to show that Cauffman & Co. recognized and treated the Distilling & Cattle Feeding Company as the real party bound to perform the contract of the Nebraska Company with that firm. It is alleged in the complaint, substantially, that Woolner's purchase was for the Distilling & Cattle Feeding Company. The portion of the third defense now under consideration is substantially an averment that Cauffman & Co. elected to hold the Distilling & Cattle Feeding Company as the party responsible to it, and the allegation is that the firm treated that corporation as such respon-

sible party. It is true that specific acts showing wherein it so treated that company are not stated in the answer. But there are allegations of a notification to Cauffman & Co. of the transfer of the contract, and their subsequent recognition of that transfer; and these allegations are made in connection with others in the same defense that Cauffman & Co. notified the Nebraska Company of their purpose to continue the contract for the additional three years, instead of notifying the defendant; they being cognizant of the fact of the transfer of the Nebraska Company's property, through Woolner, to the Distilling & Cattle Feeding Company. While there may be indefiniteness in this subdivision of the defense we are considering, yet, construed in the light of the evident purpose of the pleader in making the allegations, we think it is made sufficiently to appear that the defense relied upon is that Cauffman & Co., knowing the condition and situation of the business of the Nebraska Company as having passed into the hands of the Distilling & Cattle Feeding Company, intended to, and actually did, voluntarily accept that company as the party to be bound by, and to carry into effect the provisions of, the contract made between Cauffman & Co. and the Nebraska Company.

The fourth and fifth affirmative defenses, in so far as they set forth separate and specific facts, may not contain sufficient averments to constitute in those specific facts themselves distinct defenses to the cause of action asserted in the complaint. But each of those defenses contains allegations that those specific facts are associated with other facts antecedently contained in the answer, and which are repeated and reiterated in the same way as if they had been reaverred in terms. Thus associated, the specific facts in the fourth and fifth defenses may be regarded as amplifications or re-enforcements of prior defenses. They are not demurrable, therefore, as not being sufficient in law to constitute defenses.

The court below was in error in sustaining the demurrers, and the interlocutory judgment should be reversed, with costs and disbursements, and judgment directed for the defendant on the demurrer, with costs. All concur.