THE PEOPLE OF THE STATE OF NEW YORK ex rel. GUSTAVE KONIGSWALD, Relator, v. JAMES A. WENDELL, as Comptroller of the State of New York, Respondent.

*Taxation — income tax — deduction of money lost in wager on horse racing.*

Certiorari issued out of the Supreme Court and attested on the 28th day of March, 1921, directed to James A. Wendell, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings had in adjusting an account for income taxes for the taxable year of 1919 against the relator under article 16 of the Tax Law.

Determination confirmed, with fifty dollars costs and disbursements. All concur, except Woodward, J., dissenting with an opinion.

WOODWARD, J. (dissenting): The relator filed his income tax return for the taxable year 1919, deducting from his income as stated in the return the loss of $5,000 on horse racing. While it is possible that one might lose $5,000 in horse racing in a manner other than by gambling upon the result there is no claim here that such is the case. The relator claimed an exemption or deduction under the provisions of subdivision 5 of section 360 of the Tax Law,* claiming that he suffered a loss of $5,000 in a " transaction entered into for profit, though not connected with the trade or business " of the taxpayer, in that he wagered this amount and lost it. The Comptroller has refused to make any concessions on account of this loss, and the relator comes to this court for relief, urging that the Comptroller had no power or

---

* Added by Laws of 1919, chap. 627.— [REP.

authority to write into his regulations* the provision that "losses in illegal transactions are not deductible." It is urged, in support of the attitude of the Comptroller, that as the transaction was illegal under the provisions of the Penal Law (§§ 991, 992, 994) it is against public policy to allow the claim. But "the public policy of the State is evidenced in the public acts of its legislative body and is defined and applied in the decisions of its courts," and "it is better to adhere to the plain language of the law than to resort to the unsafe ground of inference, or of public policy." (*Matter of Lampson*, 161 N. Y. 511, 519.) In the very recent case of *Townsend v. Commercial Travelers Mutual Accident Assn.* (231 N. Y. 148) it has been held by the Court of Appeals that a death produced by the use of a hypodermic needle unlawfully in the possession of the decedent did not operate to defeat a right of recovery upon a policy of insurance, and it is difficult to understand how a mere violation of the Penal Law in reference to gambling can defeat a right of exemption under the tax laws, while a like violation of the Public Health Law presents no obstacle to the enforcement of a private contract. "The Health Law was not intended to provide protection to insurance companies. The purpose of the statute was to prevent the constant use of any habit forming drug," says the opinion of Judge Hogan. Following this course of reasoning it may be said with equal force that the laws against gambling were not intended to provide revenue for the State. The purpose was to prevent gambling. The public policy of the State, as declared in this most recent decision of the court of last resort, would seem to effectually dispose of the respondent's contention, and leave the case to be considered from the general rule that "in the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of the citizen." (*Gould* v. *Gould*, 245 U. S. 151, 153, and authorities there cited.) It seems to be practically conceded that if the relator had won in his "transaction entered into for profit, though not connected with the trade or business" (§ 360, subd. 5) he would be bound to account for this increment to his income; and it occurs to us that there is no very good reason why if money procured by crime is to be charged against the individual as income he should not be credited with the losses occurring in the same manner. When he has lost his money and incurred the penalties imposed by the statute he has presumptively paid, or become liable to pay, the penalties of his crime. To impose a further penalty by compelling him to pay an income tax upon the money he has thus unlawfully lost is to travel outside of the statute, and to give the government the benefit of a provision of law which is not to be found within the limits of the Tax Law, contrary to the prevailing rule. The determination of the respondent should be annulled, with fifty dollars costs.

* See State Comptroller's Income Tax Regulations, art. 151.— [REP.