CARL DOMRES, Appellant, *v.* SUSIE M. STORMS, as Executrix, etc., of FREDERICK W. STORMS, Deceased, Respondent.

Fourth Department, November 16, 1932.

*Jadd & Tully* [*Hamilton Ward, Harold J. Tillou, Henry Jadd* and *Solomon Tully* of counsel], for the appellant.

*Ulysses S. Thomas* [*Ralph W. Dox* of counsel], for the respondent.

THOMPSON, J. Plaintiff and defendant's decedent suffered an automobile accident in the State of Pennsylvania. They were both residents of the State of New York. The laws of the State of Pennsylvania give a right of recovery against the estate of a deceased person for damages for injuries caused by the negligence of the decedent. The laws of the State of New York do not afford such a remedy (Dec. Est. Law, § 120), and it was unknown to the common law. Decedent's estate has no property or status in the State of Pennsylvania, administration having been taken out in

this State. In this action plaintiff seeks to enforce the right of action against the estate of decedent that is given him by the laws of the State of Pennsylvania.

Respondent contends that the action will not lie upon the ground that to give effect to the Pennsylvania law is contrary to the settled public policy of the State of New York, as it is manifested in the failure of our laws to give such a remedy. We are not in accord with this view. It is said that " ' when we speak of the public policy of the State, we mean the law of the State, whether found in the Constitution, the statutes or judicial records.' " (*Straus & Co.* v. *Canadian Pacific R. Co.*, 254 N. Y. 407, 413.) The Constitution, statutes and judicial records of the State of New York nowhere reflect a settled public policy against actions of this sort. It is a transitory action and may be brought anywhere. (*Leonard* v. *Columbia Steam Navigation Co.*, 84 N. Y. 48.) Moreover, the act complained of is subject to no law having force in the forum, but " it gave rise to an obligation, an *obligatio*, which, like other obligations, follows the person, and may be enforced wherever the person may be found. * * * As the only source of this obligation is the law of the place of the act, it follows that that law determines not merely the existence of the obligation, * * * but equally determines its extent." (*Slater* v. *Mexican National R. R. Co.*, 194 U. S. 120, 126.) " By our law, a private action may be maintained in one State, if not contrary to its own policy, for such a wrong done in another and actionable there, although a like wrong would not be actionable in the State where the suit is brought." (*Huntington* v. *Attrill*, 146 U. S. 657, 670.) The settled public policy underlying the Pennsylvania law and the law of the State of New York in rights of action in cases of this kind is that the person or power that negligently inflicts injury upon another shall be responsible to that other for damages. The mere fact that no similar statute exists as a part of the law of the forum will not prevent the enforcement of a cause of action arising under a foreign statute, and the courts of this State will lend their processes for the enforcement of a cause of action given by a foreign statute, although no right of recovery in such an action is provided in the laws of the State or existed at common law. (*Fitzpatrick* v. *International R. Co.*, 252 N. Y. 127.)

The policy of the State of New York in such cases is found in the case of *Loucks* v. *Standard Oil Co.* (224 N. Y. 99), which expressly repudiates the " similar statutes " doctrine in this connection and lays down the principle that in death cases where a right of action is given in the place where the death is caused, the statute may be enforced in New York, although there is no similar statute here.

" Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right. A right of action is property. If a foreign statute gives the right, the mere fact that we do not give a like right is no reason for refusing to help the plaintiff in getting what belongs to him. * * * Courts * * * do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal. * * * The fundamental public policy is perceived to be that rights lawfully vested shall be everywhere maintained. * * * There is a growing conviction that only exceptional circumstances should lead one of the States to refuse to enforce a right acquired in another. * * * If it [*i. e.*, the test of similarity] has ever been accepted here, we think it should be abandoned now." (*Loucks* v. *Standard Oil Co., supra.*)

" * * * There is a strong public policy favoring the enforcement of obligations validly created by the law governing their creation. Denial of enforcement of the foreign claim will result in an undeserved benefit to the defendant." (American Law Institute, Restatement of the Law of Conflict of Laws, proposed final draft No. 2, p. 176.)

We have not overlooked the case of *Clough* v. *Gardiner* (111 Misc. 244; affd., 194 App. Div. 923, on opinion below), in which it was held that, it being the settled law of this State that actions for negligence do not survive the death of the wrongdoer, it is the declared public policy of the State, beyond which a right of action acquired under a foreign statute authorizing such an action, will not be enforced here. We cannot reconcile the conclusion reached by the learned court there with the broad ground taken by the Court of Appeals in *Fitzpatrick* v. *International R. Co.* and *Loucks* v. *Standard Oil Co. (supra)*. To us it is an attempted retrieval of the doctrine of the rule of similarity of statutes as stated and applied in the cases of *McDonald* v. *Mallory* (77 N. Y. 546); *Leonard* v. *Columbia Steam Navigation Co.* (84 id. 48); *Wooden* v. *Western N. Y. & P. R. R. Co.* (126 id. 10) and *Kiefer* v. *Grand Trunk R. Co.* (12 App. Div. 28; affd., on opinion below, 153 N. Y. 688), which the *Loucks* case expressly disapproves and overrules. In *Chubbuck* v. *Holloway* (182 Minn. 225; revd. on other grounds on reargument, 234 N. W. 868) this identical question is determined. In that case plaintiff and defendant's intestate were residents of Minnesota. Plaintiff was injured in Wisconsin due to the negligence of the intestate and brought an action in the State of Minnesota under statute of the State of Wisconsin which gave a cause of action for

damages against the estate of a person whose negligent acts cause injuries. A Minnesota statute provides that such an action abates on the death of the wrongdoer. The court held that the *lex loci delicti* governed and that the action did not abate. (26 Mich. Law Rev. 692, 695; 17 Va. Law Rev. 598.) In the case of *Orr* v. *Ahern* (107 Conn. 174) the accident happened in New York and the suit was brought in Connecticut. Under the laws of New York the action was abated. Under the laws of Connecticut it survived decedent's death. The Connecticut court held that the New York law prevailed. (28 Col. Law Rev. 498; 76 Univ. of Penn. Law Rev. 996.)

We hold that there are no considerations of public policy or other reasons that should deprive the plaintiff from bringing his action against the defendant in the courts of this State.

The judgment should be reversed, with costs.

All concur, except EDGCOMB, J., who dissents in an opinion and votes for affirmance.

EDGCOMB, J. (dissenting). I think that the complaint was properly dismissed by the trial court, and that the judgment appealed from should be affirmed.

Plaintiff's cause of action would not have survived Mr. Storms' death had the accident occurred in this State.

Originally, at common law, all actions arising *ex delicto* died with the person by whom or to whom the wrong was done. (*Hegerich* v. *Keddie*, 99 N. Y. 258; *Brackett* v. *Griswold*, 103 id. 425, 427; *Bernstein* v. *Queens County Jockey Club*, 222 App. Div. 191, 193, 194.)

This rule has been modified to some extent in this State by statute, but not far enough to permit the survival of an action for personal injuries.

Section 120 of the Decedent Estate Law prescribes as follows: " For wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or after his death, by his executors or administrators, against such wrongdoer, and after his death against his executors or administrators, in the same manner and with the like effect in all respects, as actions founded upon contracts. This section shall not extend to an action for personal injuries, as such action is defined in section thirty-seven-a of the general construction law; except that nothing herein contained shall affect the right of action now existing to recover damages for injuries resulting in death."

The action at bar, being one to recover for personal injuries, is not saved from abatement by the statute just quoted. It would be

different if plaintiff had sued to recover for property damage. (*Timian* v. *Whelan*, 128 Misc. 192, 194; affd., 219 App. Div. 859, upon the opinion of Cheney, J., at Trial Term.)

The plaintiff, however, insists that the courts of this State are open to him because the accident occurred in Pennsylvania, and there was at the time and still is a statute in that State known as section 35-b of the Pennsylvania Fiduciaries Act of June, 1917, as amended and supplemented, which reads as follows: " Executors or administrators shall have power, * * * to commence and prosecute all actions * * * and all personal actions which the decedent whom they represent might have commenced * * *; and they shall be liable to be sued, either alone or jointly with other defendants, in any such action, except as aforesaid, which might have been maintained against such decedent if he had lived."

*Renard* v. *Kier* (6 Dist. & Co. Rep. 375) is the only decision in Pennsylvania which has been called to our attention where it has been held that, under the provisions of the above-quoted statute, an action for personal injuries may be maintained in that State by the injured party against the executor or administrator of the deceased wrongdoer. We take it that is the law of Pennsylvania.

While it is true that an action for a tort is transitory in its nature and follows the person of the defendant (*Crashley* v. *Press Publishing Co.*, 179 N. Y. 27, 32; *Gregonis* v. *Philadelphia & Reading Coal & Iron Co.*, 235 id. 152; *Stewart* v. *Baltimore & Ohio R. R. Co.*, 168 U. S. 445, 448; *Atchison, Topeka & Santa Fe R. Co.* v. *Sowers*, 213 id. 55, 67, 68), and that our courts may entertain jurisdiction of a negligence action which arises in another State when the plaintiff is a resident of this Commonwealth (*Gregonis* v. *Philadelphia & Reading Coal & Iron Co.*, 235 N. Y. 152, 155), it is well settled that the courts of this State will not permit a party to enforce a remedy given by the statute of a sister State where the act conflicts with the settled policy of this State, or is adverse to principles of abstract justice. (*Gregonis* v. *Philadelphia & Reading Coal & Iron Co.*, 235 N. Y. 152, 161.)

" In harmony with the general law of comity obtaining among the States composing the Union, the presumption to be indulged in is that the law of a sister State is valid and when proved should be recognized, unless forbidden by the laws of our State, or by its public policy to be deduced from the general course of legislation, or from the settled adjudications of its highest court." (*People* v. *Martin*, 175 N. Y. 315, 321.)

The same rule applies in regard to contracts. An agreement which is valid in the jurisdiction where made will not be enforced by the courts of this State, if its enforcement is contrary to the

settled course adopted and followed here. (*Straus & Co.* v. *Canadian Pacific R. Co.*, 254 N. Y. 407, 414.)

It has repeatedly been held that the public policy of the State is to be determined by its laws, whether they be found in its Constitution, statutes or judicial decisions. Unless so established, a State can have no settled policy. (*People* v. *Hawkins*, 157 N. Y. 1, 12; *Dammert* v. *Osborn*, 140 id. 30, 40, 41; *Cross* v. *U. S. T. Co.*, 131 id. 330, 343; *Matter of Lampson*, 33 App. Div. 49, 51, 52; affd., 161 N. Y. 511; *Clough* v. *Gardiner*, 111 Misc. 244, 249; affd., 194 App. Div. 923; *Johnston* v. *Chicago Great Western R. Co.*, 164 S. W. 260, 262.)

" In a juridical sense, public policy does not mean simply sound policy, or good policy; but as defined by Daniel Webster in the *Girard Will Case* (2 How. [U. S.] 127) it means the policy of a State established for the public weal ' either by law, by courts or general consent.' " (*Hollis* v: *Drew Theological Seminary*, 95 N. Y. 166, 172.)

It is argued that there is nothing in and of itself repugnant to one's sense of justice in permitting an injured party to recover in an action of this kind; that it is permitted in many jurisdictions. That may be true, but the policy of this State, as expressed by statute and a long line of judicial decisions, is against the survival of actions for personal injuries where the wrongdoer dies before judgment is entered.

When the Legislature decreed that the right to maintain an action against the executor or administrator of a deceased wrongdoer " shall not extend to an action for personal injuries " (Dec. Est. Law, § 120), that indicated in no uncertain terms the course which the law-making body of this State determined should be adopted and followed in relation to such actions. Add to this the many judicial decisions in this Commonwealth bearing on this subject, and all doubt as to the policy of the law in this jurisdiction is removed. " The Legislature have said that the thing shall not be done, and that is enough." (*Jackson* v. *Walker*, 5 Hill, 27, 32.)

As defined by the above authorities, it cannot be doubted that the public policy of this State is against the maintenance of this kind of an action. That being so, our courts should turn a deaf ear and a blind eye to plaintiff's plea.

Section 426 of the Restatement of the Law of Conflict of Laws by the American Law Institute (Restatement No. 4) reads as follows: " Whether a claim for damages for a wrong survives the death of the wrong doer or of the injured person depends upon the law of the place of wrong."

Under this rule we find the following comment: " If a claim for

damages for injury survives by the law of the place of wrong recovery may be had upon it by or against the representative of the deceased party provided the law of the State of forum permits the representative of the deceased party to sue or be sued on such a claim. *Without such power created by the law of the State of suit no recovery can be had.*"  (Italics mine.)

To the same effect is *Zeikus* v. *Florida East Coast R. Co.* (144 App. Div. 91); *Wooden* v. *Western N. Y. & P. R. R. Co.* (126 N. Y. 10); *Howlan* v. *N. Y. & N. J. Tel. Co.* (131 App. Div. 443); *Leonard* v. *Columbia Steam Navigation Co.* (84 N. Y. 48).

Here not only is there an absence of any statute similar to the one in Pennsylvania, but the Legislature has specifically decreed that any survival of a tort action when the wrongdoer dies shall not extend to an action for personal injuries.

*Clough* v. *Gardiner* (111 Misc. 244; affd. on opinion of KAPPER, J., at Special Term, 194 App. Div. 923) cannot be distinguished in principle from the facts in the case at bar.  In that case plaintiff's testator was struck and killed by a car driven by one Gardiner, a resident of this State.  The accident occurred in New Hampshire. An action was commenced against Gardiner to recover the damages whicl  decedent's next of kin sustained by reason of his death. After the commencement of the action Gardiner died.  By the statutes of New Hampshire a right of revivor existed against the estate of a deceased defendant in an action to recover damages for personal injuries.  The question involved was whether such an action, having properly been brought, could be continued in this State after the death of the defendant where under our own law such an action would abate, although, had it been brought in New Hampshire, such revivor would have been authorized.  That question was answered in the negative.  The *Clough* case would seem to be decisive of this appeal.

I vote to affirm the judgment.

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.