OSCN Found Document:SILOAM SPRINGS HOTEL, LLC v. CENTURY SURETY COMPANY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 







 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 SILOAM SPRINGS HOTEL, LLC v. CENTURY SURETY COMPANY
2017 OK 14
391 P.3d 111
Case Number: 114872
Decided: 02/22/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 14, 391 P.3d 111

 

SILOAM SPRINGS HOTEL, LLC, Plaintiff,
v.
CENTURY SURETY COMPANY, Defendant.

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

¶0 The United States District Court for the Western District of Oklahoma certified to this Court a single question of state law pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2011 §§ 1601-1611.

CERTIFIED QUESTION ANSWERED

Tom E. Mullen and Sterling E. Pratt, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Plaintiff.
Phil R. Richards and Randy Lewin, Richards & Connor, Tulsa, Oklahoma, for Defendant.

COMBS, C.J.:

¶1 The United States District Court for the Western District of Oklahoma (Western District) certified a single question of state law to this Court under the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2011 §§ 1601-1611. The question certified is:

Does the public policy of the State of Oklahoma prohibit enforcement of the Indoor Air Exclusion, which provides that the insurance afforded by the policy does not apply to "'Bodily injury', 'property damage', or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause"?

We answer the question in the negative.

CERTIFIED FACTS AND PROCEDURAL HISTORY

¶2 The underlying facts in this cause are set out in the certification order from the Western District. In answering a certified question, the Court does not presume facts outside those offered by the certification order. Howard v. Zimmer, Inc., 2013 OK 17, n.5, 299 P.3d 463; In re Harris, 2002 OK 35, ¶4 n.5, 49 P.3d 710; Jones v. Univ. of Cent. Okla., 1995 OK 138, ¶5, 910 P.2d 987. Although this Court will neither add nor delete such facts, we may consider uncontested facts supported by the record. Howard, 2013 OK 17, n.5; McQueen, Rains, & Tresch, LLP v. CITGO Petroleum Corp., 2008 OK 66, n.4, 195 P.3d 35; In re Harris, 2002 OK 35, ¶4.

¶3 Defendant Century Surety Company (Century) issued a Commercial Lines Policy to Plaintiff Siloam Springs Hotel, L.L.C. (Siloam). This policy included general liability insurance coverage of Siloam's hotel in Siloam Springs, Arkansas, for the policy period from November 13, 2012, through November 13, 2013. The insuring agreement of the general liability coverage form provided that Century would pay sums the insured was legally obligated to pay as damages because of bodily injury to which the insurance applies and that Century would have the right and duty to defend the insured against any suit seeking such damages.

¶4 The coverage provided by the policy was modified by an "Arkansas - Special Exclusions and Limitations Endorsement" (Exclusions) which added certain exclusions to the policy. At issue in the underlying cause is the interpretation of section (A)(6) of the Exclusions (Indoor Air Exclusion), specifically subsection (j) which provides that the insurance afforded by the policy does not apply to:

"Bodily injury", "property damage", or "personal and advertising injury" arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause.

Century Surety Policy, CGL 1701AR 0711, Section A(6)(j), p.1.

¶5 On January 17, 2013, several guests inside of the hotel allegedly suffered bodily injury due to carbon monoxide poisoning. The carbon monoxide allegedly escaped into the air due to leakage from the hotel's indoor swimming pool heater. Siloam sought coverage under its policy from Century, which Century denied based on the Indoor Air Exclusion at issue.

¶6 After Century denied coverage, Siloam filed suit seeking a declaration that the policy provides coverage for the bodily injury of the guests which occurred on January 17, 2013. Siloam originally filed suit in the District Court of Oklahoma County on May 12, 2013, but the cause was removed to the Western District after Century filed a notice of removal on June 4, 2013.

¶7 Both parties moved for summary judgment in the Western District on April 1, 2014. In an order filed on May 14, 2014, the Western District granted Century's motion for summary judgment and denied Siloam's motion. The court determined: 1) the Indoor Air Exclusion was not ambiguous; and 2) the exclusion applied to Siloam's claim for the injuries of its guests and therefore the policy issued by Century afforded no coverage for the loss. Accordingly, the court entered judgment for Century.

¶8 Siloam appealed the Western District's ruling to the United States Court of Appeals for the Tenth Circuit (Tenth Circuit). The Tenth Circuit issued its opinion in the matter on March 31, 2015. Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233 (10th Cir. 2015). The Tenth Circuit did not reach the merits of the underlying cause because it noticed a potential jurisdictional defect in the notice of removal to federal court filed by Century at the onset of litigation. Siloam Springs Hotel, L.L.C., 781 F.3d at 1235. The Tenth Circuit determined that Century's notice of removal incorrectly identified Siloam as a "corporation" organized under Oklahoma law with its principle place of business in Arkansas, when in fact Siloam is an Oklahoma limited liability company. Siloam Springs Hotel, L.L.C., 781 F.3d at 1235.

¶9 Because Siloam is an Oklahoma limited liability company, the Tenth Circuit determined that references to its state of organization and state of its primary business operations were insufficient to determine citizenship for purposes of federal diversity jurisdiction. Siloam Springs Hotel, L.L.C., 781 F.3d at 1237-38. Instead, the Tenth Circuit joined other circuits that have previously considered the issue and determined that in determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all of the entity's members. Siloam Springs Hotel, L.L.C., 781 F.3d at 1237-38. The Tenth Circuit held that for diversity purposes, Siloam Springs takes the citizenship of all of its members, because under Oklahoma law an LLC is an unincorporated association or proprietorship. Siloam Springs Hotel, L.L.C., 781 F.3d at 1237.

¶10 The Tenth Circuit further held that the time period for determining the existence of complete diversity is at the time of the filing of the complaint. Siloam Springs Hotel, L.L.C., 781 F.3d at 1239. Because the allegations in Century's notice of removal did not properly allege diversity of citizenship, and because the court could not determine the existence or non-existence of diversity jurisdiction based on the record before it, the Tenth Circuit remanded to the district court for further proceedings. Siloam Springs Hotel, L.L.C., 781 F.3d at 1239.

¶11 In the closing paragraph of its opinion, however, the Tenth Circuit provided guidance to the Western District that is relevant to this Court's task in analyzing the certified question posed to it. The Tenth Circuit noted:

In light of the need to remand this case for further development of the jurisdictional record, it is worth noting that states have a particularly strong interest in insurance regulation. Cf., e.g., The Aransas Project v. Shaw, 775 F.3d 641, 650 (5th Cir.2014); Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1232 (9th Cir.1998) (en banc) (Alarcon, J., dissenting) (collecting cases); Ford Motor Co. v. Ins. Comm'r, 874 F.2d 926, 934 (3d Cir.1989). Furthermore, although the parties argue the coverage issue exclusively by reference to generally applicable contract principles, it is far from clear the coverage issue at the center of this case is completely devoid of public policy implications. Given these factors, should the district court conclude on remand that diversity jurisdiction is proper, it would be well advised to move on to consider whether the state's interest in insurance regulation would be best served by certifying the coverage questions at issue in this case to the appropriate state supreme court.

Siloam Springs Hotel, L.L.C., 781 F.3d at 1239.

The Tenth Circuit also noted that to determine the proper court for certification, the Western District would need to definitively decide whether the cause is governed by Arkansas or Oklahoma law. Siloam Springs Hotel, L.L.C., 781 F.3d at 1239, n.3.

¶12 On remand, the Western District ordered Century to file a brief with supporting evidence concerning whether complete diversity existed at the time Siloam filed suit in state court. Having reviewed the evidence, the Western District issued an order on February 9, 2016, determining it had jurisdiction over the matter. The court determined complete diversity of citizenship existed at the time Siloam's suit was filed and at the time it was removed to federal court by Century. The Western District further determined that the questions at issue in the cause should be certified to the appropriate state supreme court per the Tenth Circuit's opinion, and it ordered the parties to submit briefs regarding: 1) which state supreme court is the appropriate state supreme court for certification, Arkansas or Oklahoma, and 2) what question(s) should be certified.

¶13 During briefing on the above two questions, the parties differed as to the scope of the question(s) they believed it appropriate for the Western District to certify. Siloam argued Oklahoma law applies, and asserted two questions directly addressing the ambiguity of the Indoor Air Exclusion and its application to the instant cause should be certified to this Court. Century also argued Oklahoma law is applicable, but asserted the only question certified should be whether the public policy of this state prohibits enforcement of the Indoor Air Exclusion. In an order filed March 21, 2016, the Western District held that Oklahoma law applies, and determined the question certified should be narrowly tailored to address only the policy concern expressed by the Tenth Circuit. Accordingly, it certified the following question:

Does the public policy of the State of Oklahoma prohibit enforcement of the Indoor Air Exclusion, which provides that the insurance afforded by the policy does not apply to "'Bodily injury', 'property damage', or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause"?

Order Certifying Question to the Oklahoma Supreme Court, March 21, 2016, p.2.

I.
PROCEDURE AND REQUIREMENTS FOR ANSWERING
CERTIFIED QUESTIONS

¶14 Unresolved questions of law may be answered by this Court if certified questions are presented in accordance with the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2011 §§ 1601-1611. Gov. Employees Ins. Co. v. Quine, 2011 OK 88, ¶13, 264 P.3d 1245. This Court's discretionary power to answer is set out in 20 O.S. 2011 § 1602, which provides:

The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.

Accordingly, in assessing whether a certified federal question of law should be answered by this Court, both factors mentioned by 20 O.S. 2011 § 1602 should be addressed: 1) would the answer be dispositive of an issue in pending litigation in the certifying court; and 2) is there established and controlling law on the subject matter? Quine, 2011 OK 88, ¶13, 264 P.3d 1245.[1] 

¶15 This Court also possesses discretionary authority to reformulate the question(s) certified. McQueen, Rains & Tresch, LLP v. Citgo Petroleum Corp., 2008 OK 66, ¶1 n.1, 195 P.3d 35; Tyler v. Shelter Mutual Ins. Co., 2008 OK 9, ¶1 n.1, 184 P.3d 496; McClure v. ConocoPhillips Co., 2006 OK 42, ¶1 n.1, 142 P.3d 390. This authority is set out in 20 O.S. 2011 § 1602.1, which provides: "[t]he Supreme Court of this state may reformulate a question of law certified to it."[2]

¶16 At the outset, this Court notes that although Siloam has not specifically requested that this Court reformulate the question certified to us by the United States District Court for the Western District of Oklahoma, Siloam has indicated in briefing that it believes the public policy question certified is intrinsically linked to the meaning of the Indoor Air Exclusion and its potential ambiguity. Siloam argues a negative answer to the certified question alone is not outcome determinative:

. even if public policy does not prohibit the enforcement of the Indoor Air Exclusion generally, the question of whether the Indoor Air Exclusion is ambiguous as applied-the coverage question at issue in this lawsuit-remains to be answered.

Brief of Plaintiff Siloam Springs Hotel, LLC, Regarding Certified Question, p. 1.

Contrary to Siloam's argument, however, 20 O.S. 2011 § 1602 does not foreclose an answer to a question simply because this Court's response may not be dispositive of the cause. All that is required for us to answer a certified question is that the response be determinative of a single issue in the cause and that no controlling state law exist. Hollaway v. UNUM Life Ins. Co. of America, 2003 OK 90, ¶13, 89 P.3d 1022.

¶17 Siloam also emphasizes the Tenth Circuit advised the Western District to certify the coverage questions at issue, generally, to the appropriate state court. Specifically, the Tenth Circuit stated:

Furthermore, although the parties argue the coverage issue exclusively by reference to generally applicable contract principles, it is far from clear the coverage issue at the center of this case is completely devoid of public policy implications. Given these factors, should the district court conclude on remand that diversity jurisdiction is proper, it would be well advised to move on to consider whether the state's interest in insurance regulation would be best served by certifying the coverage questions at issue in this case to the appropriate state supreme court.

Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1239 (10th Cir. 2015).

¶18 The Western District has already made a determination that the Indoor Air Exclusion is unambiguous and that the policy issued by Century did not provide coverage. While Siloam is correct that the Tenth Circuit suggested the Western District certify the coverage questions at issue to the appropriate state court, the Tenth Circuit did not reverse the Western District's underlying determinations, or indeed make any ruling on the merits of the matter, instead confining its opinion to the question of diversity jurisdiction. Further, the question certified is determinative of one of the issues in the cause, and no controlling precedent exists. Hollaway, 2003 OK 90, ¶13. This Court will answer the question as certified.

II.
THE PUBLIC POLICY OF THE STATE OF OKLAHOMA DOES NOT
PROHIBIT ENFORCEMENT OF THE INDOOR AIR EXCLUSION

¶19 The question certified to this Court concerns public policy in the state of Oklahoma and whether it prohibits enforcement of a specific coverage exclusion in an insurance contract. We determine it does not.

A.Freedom of Contract May Be Limited By Public Policy

¶20 While the freedom of individuals to contract is an important aspect of our society, that freedom is not absolute. This Court has long acknowledged that freedom of contract may be limited by the public policy of the state of Oklahoma. See Harkrider v. Posey, 2000 OK 94, ¶19 n.42, 24 P.3d 821; Mercury Inv. Co. v. F.W. Woolworth Co., 1985 OK 38, ¶10 n.14, 706 P.2d 523; Cameron & Henderson v. Franks, 1947 OK 232, ¶36, 184 P.2d 965. In Cameron & Henderson v. Franks, this Court stated:

Public policy is synonymous with the policy of the law, expressed by manifest will of the state. Jacoway v. Denton, 25 Ark. 625. Its principle inhibits that which has a tendency to be injurious to the good of all. Disbrow v. Cass County Board of Sup'rs, 119 Iowa 538, 93 N.W. 585. Public policy is variable in so far as habits and capacities of the public become more varied and complex, but the principle to be applied is unchanged and unchangeable. Wakefield v. Van Tassell, 202 Ill. 41, 66 N.E. 830, 65 L.R.A. 511, 95 Am.St.Rep. 207.

Public policy extends to freedom of contract in so far as private dealing is restricted by law for the good of the community. People's Bank v. Dalton, 2 Okl. 476, 37 P. 807. Yet public policy in the administration of law by the court may be essentially different from what may be public policy in the view of the Legislature. Enders v. Enders, 164 Pa. 266, 30 A. 129, 27 L.R.A. 56, 44 Am.St.Rep. 598.

Judicial tribunals often cautiously hold that there is no public policy except what is to be found in statutory laws and the Constitution. Smith v. Du Bose, 78 Ga. 413, 3 S.E. 309, 6 Am.St.Rep. 260. But the public policy of the state has been found in judicial records as well as in the statutes and Constitution. People v. Hawkins, 157 N.Y. 1, 51 N.E. 257, 42 L.R.A. 490, 68 Am.St.Rep. 736;Swann v. Swann, C.C., 21 F. 299. Public policy has been established by general consent as well as by the courts, In re Lampson's Will, 33 App.Div. 49, 53 N.Y.S. 531, particularly as declared by the state's highest court, Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co., 175 U.S. 91, 20 S.Ct. 33, 44 L.Ed. 84.

1947 OK 232, ¶¶35-37 (emphasis added).

¶21 Freedom of contract is limited then, insomuch as it conflicts with the public policy of Oklahoma. Only a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state can serve as a source of Oklahoma's public policy. Kruchowski v. Weyerhaeuser Co., 2008 OK 105, ¶24 n.22, 202 P.3d 144; Vasek v. Bd. of County Comm'rs of Noble County, 2008 OK 35, ¶12, 186 P.3d 928; Darrow v. Integris Health, Inc., 2008 OK 1, ¶13, 176 P.3d 1204. The Oklahoma Legislature, not this Court or Congress, is primarily vested with the responsibility to declare the public policy of this state. Griffin v. Mullinix, 1997 OK 120, ¶18, 947 P.2d 177. See City of Anadarko v. Fraternal Order of Police, Lodge 118, 1997 OK 14, ¶10, 934 P.2d 328 ("It is the duty of the Legislature to make the public policy for Oklahoma."); City of Bethany v. Public Employees Relations Bd. of State of Okla., 1995 OK 99, ¶27, 904 P.2d 604 ("In the absence of specific guidance in the Oklahoma Constitution, it is the Legislature, and not this Court, which is vested with responsibility for declaring the public policy of this state. When courts make public policy pronouncements, they are worthy of respect only when they are rooted in specific sources of law and not in the policy preferences of the judges who render them."). This Court, then, will look to will of the Legislature as embodied in the statutes to determine the public policy of the state of Oklahoma.

¶22 Under Oklahoma law, insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into policy. Shepard v. Farmers Ins. Co., Inc., 1983 OK 103, ¶2, 678 P.2d 250. The parties to an insurance contract agree upon the terms of the contract and are free to limit or restrict an insurer's liability. Shepard, 1983 OK 103, ¶2. The court will interpret the policy in light of the statute, but will not rewrite the contract. Shepard, 1983 OK 103, ¶2; Wiley v. Travelers Insurance Co., 1974 OK 147, ¶16, 534 P.2d 1293; American Iron & M. Wks. v. Insurance Co. of N. Am., 1962 OK 197, ¶12, 375 P.2d 873. Looking beyond the express terms of the statutes, in Oklahoma, a contract violates public policy only if it clearly tends to injure public health, morals or confidence in the administration of law, or if it undermines the security of individual rights with respect to either personal liability or private property. Shepard, 1983 OK 103, ¶3; Anderson v. Reed, 1928 OK 268, ¶22, 270 P. 854. See Parker v. Indep. School Dist. No. I-003 of Okmulgee County, Okla., 82 F.3d 952, 954-955 (10th Cir. 1996). Courts will exercise their power to nullify contracts made in contravention of public policy only rarely, with great caution and in cases that are free from doubt. Shepard, 1983 OK 103, ¶3; Johnston v. J.R. Watkins Co., 1945 OK 123, ¶12, 157 P.2d 755; Camp v. Black Gold Petroleum Co., 1941 OK 371, ¶15, 119 P.2d 815.

¶23 This Court has previously found coverage exclusions in insurance contracts to be unenforceable when they violate established public policy as expressed in the Oklahoma statutes. In Ball v. Wilshire Insurance Co, 2009 OK 38, 221 P.3d 717, this Court answered questions of state law certified to it by the Tenth Circuit. The first question certified--and the one relevant to our current analysis--was whether a motor-vehicle insurance policy provision that excluded any coverage for vehicles loaned or rented to others, was void in whole or in part, in light of Oklahoma's Compulsory Liability Insurance statute, 47 O.S. §7-600 to §7-612. Ball, 2009 OK 38, ¶1.

¶24 This Court determined the loaned vehicle exclusion violated public policy as expressed in the Compulsory Liability Insurance statute, holding:

The principal purpose of compulsory liability insurance is to protect the public from the financial hardship that may result from the use of automobiles by people who are financially unable to respond in damages for any injury done. In enacting legislation compelling the purchase of liability insurance, the legislature intended that every vehicle operated in this state be secured against liability to innocent victims of the negligent operation of insured vehicles. This clearly articulated public policy plainly overrides contrary private agreements that restrict coverage whenever the contractual strictures do not square with the purpose of the Compulsory Liability Insurance Law. In light of this public policy, clauses which would exclude from coverage all potential claimants have been almost uniformly invalidated because they are at odds with the legislative intent of the Compulsory Liability Insurance Law. Our decisions make clear that an insured vehicle cannot be rendered uninsured vis a vis the general public.

Ball, 2009 OK 38, ¶12 (footnotes omitted).

Ball illustrates the manner in which an insurance clause can be void and unenforceable if it violates public policy as expressed in the Oklahoma statutes. Ball is also merely one of many cases in which this Court has invalidated automobile insurance clauses for violating public policy as expressed in the Compulsory Liability Insurance Law.[3]

¶25 The interplay between freedom of contract and public policy is also at the core of another line of cases, those concerning the employment-at-will doctrine.[4] The principle of freedom of contract is one of the factors behind the growth of the at-will doctrine. Burk v. K-Mart Corp., 1989 OK 22, ¶5, 770 P.2d 24. In Burk, this Court noted:

. the terminable-at-will doctrine is "not absolute however, and the interests of the people of Oklahoma are not best served by a marketplace of cut-throat business dealings where the law of the jungle is thinly clad in contractual lace."

1989 OK 22, ¶6 (quoting Hall v. Farmers Ins. Exchange, 1985 OK 40, ¶13, 713 P.2d 1027).

Accordingly, this Court adopted a public policy exception to the employment-at-will doctrine "in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." Burk, 1989 OK 22, ¶17. Though Burk and its progeny[5] concern an action in tort, the underlying interaction between public policy concerns and freedom of contract is still useful in this context to provide a firm framework for when this Court is willing to invalidate contractual provisions for public policy reasons.

B.The Indoor Air Exclusion Does Not Run Afoul of Public Policy
Concerns

¶26 Siloam acknowledges at the outset that Oklahoma appellate opinions holding insurance policy exclusions violate public policy appear to be limited to the compulsory automobile insurance and uninsured motorist contexts, discussed supra. However, Siloam cites to Shepard for the proposition that a contract violates public policy, even absent an express statutory expression, if it "clearly tends to injure public health, morals or confidence in the administration of law." 1983 OK 103, ¶3, 678 P.2d 250.

¶27 Siloam then asserts that the coverage question before the Western District, concerning the Indoor Air Exclusions ambiguity, is a necessary aspect of any determination concerning whether the Indoor Air Exclusion violates public policy. This is so, according to Siloam, because the Indoor Air Exclusion as applied to a sudden carbon monoxide leak violates public policy because it potentially denies compensation to victims under circumstances in which a reasonable person would expect that liability insurance would be available to compensate for the injury. By way of contrast, Siloam argues an indoor air exclusion for long-term air quality issues like mold might not violate public policy, as a reasonable person would not expect liability coverage in that situation because the policy holder would have ample time to detect and remedy the issue. Per this line of argument, while the Indoor Air Exclusion may not violate public policy generally, as applied to sudden and accidental occurrences, as in this cause, it would violate public policy.

¶28 Siloam's focus on the scope of the Indoor Air Exclusion is misplaced. Questions concerning the parameters of the Indoor Air Exclusion and its ambiguity, if any, were not certified to and are not before this Court. They are also not necessary for us to answer the question certified. Regardless of the interpretation of the Indoor Air Exclusion, the public policy of the State of Oklahoma does not prohibit its enforcement.

¶29 This cause is distinguishable from our automobile insurance cases because, as the parties note, there is no public policy articulated by the Oklahoma statutes that is violated by an air quality exclusion in a liability insurance policy, regardless of what air quality events the exclusion might exempt. Oklahoma has no compulsory liability insurance law requiring liability insurance be maintained for air quality issues, nor is there any law explicitly prohibiting such an exclusion. Indeed, outside of statutory requirements, this Court has previously noted we are mindful that an insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase. Bituminous Cas. Corp. v. Cowen Const., Inc., 2002 OK 34, ¶9, 55 P.3d 1030; Torres v. Sentry Insurance, 1976 OK 195, ¶7, 558 P.2d 400; Wiley v. Travelers Insurance Co., 1974 OK 147, ¶16, 534 P.2d 1293. In Ball this Court refused to interfere in insurance contract provisions beyond the express requirements of the statutory mandate, in order to give "effect to the public policy underlying the Compulsory Liability Insurance Law while refraining from unduly interfering with the parties' freedom to contract, which can be restricted only in the name of articulated public policy." Ball, 2009 OK 38, ¶18.

¶30 Siloam would have us greatly circumscribe the freedom of contract principles articulated above by finding a coverage exclusion violates public policy if there is no public policy justification for its existence, and if it excludes coverage under circumstances where a responsible person would expect that liability insurance would be available to compensate for an injury.[6] There is no precedent for such an encroachment into parties' freedom to contract for liability coverage, and it runs counter to the carefully circumscribed approach this Court articulated in Ball.

¶31 The issue before this Court is not potential compensation to injured parties and the reasonableness of expecting it, but the enforceability of an exclusion limiting insurance coverage. Even were the exclusion to fully exclude the events of this cause from coverage under the insurance contract, that does not necessarily mean injured individuals will be unable to recover from Siloam itself. The insurance contract limits what Century must pay, and does not serve to limit Siloam's potential liability. Just because one believes the air they breathe might become contaminated, and expects a business should carry insurance to cover that eventuality, does not mean the law requires it.

¶32 Further, any reliance on Shepard is misplaced. As we noted in that cause, the parties to an insurance contract agree upon the terms of the contract and are free to limit or restrict an insurer's liability. Shepard, 1983 OK 103, ¶2. An insurance coverage limitation between Century and Siloam is not the same as, for example, an exculpatory clause limiting liability in tort against Siloam by its guests. See Schmidt v. U.S., 1996 OK 29, 912 P.2d 871. Regardless of its scope, the Indoor Air Exclusion neither clearly tends to injure public health, morals or confidence in administration of law, nor undermines the security of individual rights with respect to either personal liability or private property. See Shepard, 1983 OK 103, ¶3.

¶33 In short, there is no clearly articulated public policy in Oklahoma, statutory or otherwise, that prohibits enforcement of the Indoor Air Exclusion at issue in this cause. Regardless of the precise coverage limitations of the exclusion, Century and Siloam were free to negotiate and contract for coverage as they saw fit.

CONCLUSION

¶34 In answer to the certified question, we declare that the public policy of the State of Oklahoma does not prohibit enforcement of the Indoor Air Exclusion which provides that the insurance afforded by the policy at issue does not apply to "'Bodily injury', 'property damage', or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause".

CERTIFIED QUESTION ANSWERED

CONCUR: COMBS, C.J., WINCHESTER, EDMONDSON, REIF, JJ., and BUETTNER, S.J.

CONCUR IN PART; DISSENT IN PART: KAUGER, J. (by separate writing)

DISSENT: GURICH, V.C.J., WATT, and COLBERT, JJ.

NOT PRESENT AND NOT PARTICIPATING: WYRICK, J.

FOOTNOTES

[1] In Ball v. Wilshire Ins. Co., this Court noted:

We have elected to decline to answer questions certified in a number of causes. Scottsdale Ins. Co. v. Tolliver, 2005 OK 93, 127 P.3d 611 [Declined to answer certified question where controlling Oklahoma precedent existed on the issue certified.]; Hammock v. United States, 2003 OK 77, 78 P.3d 93 [Declined to answer one of two certified questions because of lack of legal relationship necessary to determine the issue.]; Bituminous Casualty Corp. v. Cowen Constr. Co., 2002 OK 34, 55 P.3d 1030, 106 A.L.R.5th 713 [Declined to answer one of two questions certified where response to one question disposed of the case.]; Cray v. Deloitte Haskins & Sells, 1996 OK 102, 925 P.2d 60 [Declined to answer certified question since federal judge made final determination on issue of duty such that Supreme Court was without judicial authority to either affirm or reverse that judgment.]

2007 OK 80, ¶4 n. 8, 184 P.3d 463.

[2] Title 20 O.S. 2011 § 1604 requires the certifying court acknowledge this authority and states the certification order must contain "[a] statement acknowledging that the Supreme Court or Court of Criminal Appeals of this state, acting as the receiving court, may reformulate the question." The certification order from the Western District does not contain such a statement, but otherwise complies with statutory requirements.

[3] This Court noted several of them in Ball, 2009 OK 38, ¶12 n.23:

See Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc., 1987 OK 121, 747 P.2d 947 (answering certified question of law, court held that it was a violation of public policy for insurer and insured to agree that liability insurance coverage of a commercial vehicle would not apply beyond a 200-mile radius; provision void insofar as it limited the minimum coverage required by the statute); Young v. Mid-Continent Cas. Co., 1987 OK 88, 743 P.2d 1084 (invalidating clause in automobile liability insurance policy that excluded coverage if insured vehicle was operated by any person under the age of twenty-five years); Nation v. State Farm Ins. Co., 1994 OK 54, 880 P.2d 877 (Per Curiam) (invalidating to the extent of the minimum coverage required by statute an exclusion that eliminated liability coverage for injury to members of the family of an insured who reside in the same household as the insured); Harkrider v. Posey, 2000 OK 94, 24 P.3d 821 (refusing to permit an insurance company to rescind an insurance policy as to an innocent third-party victim based on a misrepresentation in the application); Hartline v. Hartline, 2001 OK 15, 39 P.3d 765 (holding that named insured injured while riding as a passenger could not be excluded from liability coverage where the other named insured had rejected uninsured motorist coverage).

[4] The at-will employment doctrine is explained succinctly in Burk v. K-Mart Corp., where this Court noted:

This Court has long recognized the basic principle that an employment contract of indefinite duration may be terminated without cause at any time without incurring liability for breach of contract. Such indefinite employment contracts are deemed terminable-at-will. The classic statement of the at-will rule was that an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong

1989 OK 22, ¶5, 770 P.2d 24 (footnotes omitted).

[5] This Court has continued to refine and apply the parameters of the Burk tort over the years. See, e.g., Moore v. Warr Acres Nursing Center, LLC., 2016 OK 28, __ P.3d ___; Vasek v. Bd. Of County Comm'rs, 2008 OK 35, 186 P.3d 928; Silver v. CPC-Sherwood Manor, Inc., 2004 OK 1, 84 P.3d 728; Clinton v. State of Oklahoma ex rel. Logan County Election Bd., 2001 OK 52, 29 P.3d 543.

[6] Siloam asserts in its brief:

As applied to ongoing and continuous attributes of indoor air, the Indoor Air Exclusion is reasonable-a commercial enterprise can take measures to prevent ongoing and continuous hazards and the unavailability of liability coverage could help incentivize the prevention of ongoing and continuous hazards. As applied to sudden and accidental carbon monoxide leaks or fires, on the other hand, the Indoor Air Exclusion cannot be reasonably justified by incentivizing a commercial entity to take greater precautions because sudden and accidental occurrences are facts of life which can be extremely difficult if not impossible to prevent. There is, therefore, no public policy justification for the application of the Indoor Air Exclusion to a sudden and accidental carbon monoxide leak. In the absence of any public policy justification, the Indoor Air Exclusion as applied to a carbon monoxide leak violates public policy because it potentially denies compensation to victims under circumstances in which a reasonable person would expect that liability insurance would be available to compensate for injury.

Brief of Plaintiff Siloam Springs Hotel, LLC, Regarding Certified Question, p. 3.

 

 

KAUGER, J., concurring in part/dissenting in part:

¶1 The United States District Court for the Western District of Oklahoma certified to this Court the following question:

Does the public policy of the State of Oklahoma prohibit enforcement of the Indoor Air Exclusion, which provides that the insurance afforded by the policy does not apply to "'Bodily injury,' 'property damage,' or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause"?

Having determined that the question must be reformulated, I conclude that the Indoor Air Exclusion does not exclude coverage in the present case.

FACTS

¶2 Defendant, Century Surety Company (insurer), issued an insurance policy to Plaintiff, Siloam Springs Hotel, L.L.C. (hotel), which provided general liability insurance coverage of the hotel in Siloam Springs, Arkansas, from November 13, 2012, through November 13, 2013. The policy stated that the insurer would cover that which the hotel was legally obligated to pay as a result of damages caused by bodily injury. The policy also included an "Indoor Air Exclusion," which provided that the insurance does not apply to:

"Bodily injury," "property damage," or "personal and advertising injury: arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause.

¶3 On January 17, 2013, several guests in the hotel were allegedly injured due to carbon monoxide poisoning. The carbon monoxide entered the air after a sudden, accidental leak in the hotel's indoor swimming pool heater. The hotel sought coverage under its insurance policy and the insurer denied coverage, relying on the Indoor Air Exclusion.

¶4 The hotel brought suit in Oklahoma state court, seeking a declaration that the policy did provide coverage for the injury of its guests. Based on complete diversity of citizenship, the insurer removed the case to the United States District Court for the Western District of Oklahoma. There, the parties filed cross-motions for summary judgment, and the district court granted summary judgment to the insurer.[1] It concluded that the policy excluded coverage for bodily injury resulting from a one-time exposure to carbon monoxide. We are not bound by this conclusion. Rather, the determination of the ambiguity of the insurance contract is a question for state courts, not federal courts.

¶6 By virtue of the Supremacy Clause, we are governed by the decisions of the United States Supreme Court with respect to the federal constitution and federal law and we must pronounce rules of law that conform to extant Supreme Court jurisprudence. Nevertheless, nothing in the concept of supremacy or in any other principle of law requires subordination of state courts to the lower federal courts. Subject to decisions of the United States Supreme Court, we are free to promulgate judicial decisions grounded in our own interpretation of federal law. Where no Supreme Court directive exists, federal law is merely instructive in providing guidance on state law questions.[2]

¶7 Additionally, governmental authority to regulate the insurance business as an enterprise affected with public interest lies within the state's recognized police power.[3] Because attempts to place the insurance industry under congressional control as an activity in interstate commerce failed to take hold, the states continue to have plenary power to regulate this business in the public interest.[4] State government's police power to regulate the insurance industry is part of the exiting law in every insurance contract that is executed. That power, in contemplation of law, is a part of every such contract.[5]

¶8 The hotel appealed to the United States Court of Appeals for the Tenth Circuit.[6] The Tenth Circuit remanded due to a potential lack of jurisdiction and did not address the merits of the case. The insurer's notice of removal referred to the hotel as a "corporation" incorporated in Oklahoma with its principal place of business in Arkansas. The hotel, however, is a limited liability company. The Tenth Circuit determined that for diversity purposes, a limited liability company assumes the citizenship of each of its members. Because the court could not determine whether complete diversity existed based on the record before it, it remanded the case. After determining that remand was appropriate, the Tenth Circuit highlighted the particularly strong interest that states have in regulating the insurance industry. It then recommended:

Furthermore, although the parties argue the coverage issue exclusively by reference to generally applicable contract principles, it is far from clear the coverage issue at the center of this case is completely devoid of public policy implications. Given these factors, should the district court conclude on remand that diversity jurisdiction is proper, it would be well advised to move on to consider whether the state's interest in insurance regulation would be best served by certifying the coverage questions at issue in this case to the appropriate state supreme court.

¶9 On remand, the district court concluded that complete diversity of citizenship existed at the time of removal and that it therefore had jurisdiction over the case. It then certified to this Court the following question under the Revised Uniform Certification of Questions of Law Act[7] :

Does the public policy of the State of Oklahoma prohibit enforcement of the Indoor Air Exclusion, which provides that the insurance afforded by the policy does not apply to "'Bodily injury,' 'property damage,' or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause"?[8]

I.

The Certified Question Must Necessarily Be Reformulated To Determine
What The Indoor Air Exclusion Actually Excludes.

¶10 When responding to a certified question, this Court is not limited to the specifics posed by the certifying court. Title 20 O.S. 2011 §1602.1 provides that "[t]he Supreme Court of this state may reformulate a question of law certified to it." We have repeatedly exercised this discretion.[9] And while the Court does not presume facts outside of those offered in the certification order,[10] it is not bound by the legal conclusion of the certifying court. The Revised Uniform Certification of Questions of Law Act places only two limitations on the Court's answer: the answer must be determinative of an issue in pending litigation and there cannot be established or controlling law on the issue.[11] Instead, when receiving a certified question, this Court "has authority to answer any question which may be determinative of an issue in the cause."[12]

¶11 For example, in American Economy Insurance Co. v. Bogdahn, 2004 OK 9, ¶ 1, 89 P.3d 1051, the Court of Appeals for the Tenth Circuit certified a single question, which asked whether a specific individual was insured under an insurance policy.[13] The question was reformulated into two questions, one addressing the ambiguity of a phrase in the policy, and another addressing the doctrine of reasonable expectations relating to insurance coverage.[14]

¶12 The certified question in the present case, whether Oklahoma's public policy prohibits enforcement of the Indoor Air Exclusion, cannot be answered without first determining what the Indoor Air Exclusion actually excludes. If the meaning of the Indoor Air Exclusion is unclear, then whether it violates Oklahoma's public policy is also unclear. The Indoor Air Exclusion's lack of clarity creates the central dispute of this case. The hotel reads it as covering a carbon monoxide leak, while the insurer does not. It is an issue that has been litigated in many other jurisdictions, with some courts determining that carbon monoxide leaks are covered by similar provisions and other courts determining that they are not.[15] Accordingly, the question should be reformulated into two distinct inquiries.

1. Does the Indoor Air Exclusion, which provides that the insurance afforded by the policy does not apply to "'[b]odily injury,' 'property damage,' or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause," exclude application of the policy to bodily injury caused by carbon monoxide poisoning?

2. If so, does the public policy of the State of Oklahoma prohibit its enforcement?

¶13 The Tenth Circuit's suggestion to the district court is in accord with this reformulation. In its recommendation reprinted in full above, the Tenth Circuit stated that the district court would be well advised to certify "the coverage questions at issue in this case." It noted that it is far from clear that "coverage issue at the center of this case is completely devoid of public policy implications." The public policy analysis of the exclusion will necessarily turn on the issue of what the policy covers, so the coverage issue must first be addressed.

II.

History of Pollution Exceptions.

¶14 The Indoor Air Exclusion is derivative of a pollution exclusion that has been found in insurance policies for decades. This category of exclusion has been heavily litigated, and a brief history of it and its variants helps place the present case in context.

¶15 In the 1970's, the enactment of environmental statutes and increased public awareness about the harmful effects of pollution led to a significant rise in pollution-related insurance claims.[16] Insurance companies responded by offering distinct environmental liability policies and limiting coverage in their general liability policies.[17] For example, coverage would be excluded for:

Bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.[18]

Most policies included an exception to the exclusion if the discharge or escape was "sudden or accidental."[19] This exception produced "volumes of case law"[20] and was "one of the most hotly litigated insurance coverage questions of the late 1980's."[21] Some jurisdictions interpreted this language broadly to hold insurance companies liable in a number of cases, and the insurance companies responded.[22]

¶16 The standard language in many policies then became an "absolute pollution exclusion."[23] These provisions removed any exception for the "sudden and accidental" release of pollution, and removed the requirement that the pollution be discharged "into or upon land, the atmosphere or any watercourse or body of water."[24] Insurance industry regulators were concerned about the breadth of claims that the exclusion would prevent, noting that insurance companies could argue that the provision applies in situations outside environmental pollution.[25] The insurance industry, however, represented to regulators that the provision would be applied only to traditional environmental pollution.[26] Nevertheless, insurance companies did deny coverage for claims outside the traditional understanding of environmental pollution.[27] Another torrent of litigation ensued, with some jurisdictions limiting the exclusion to traditional environmental pollution of the air, water, and soil, and not applying it to injuries caused by toxic substances that occurred in the normal course of business.[28]

¶17 It seems that the insurance industry has again responded. Continuing an apparent trend of broadening policy provisions in response to judicial decisions, the provision in the present case does not mention the word "pollution," but instead refers to toxic, hazardous, noxious, or irritating qualities or characteristics of air. With this background in mind, we turn to the Indoor Air Exclusion.

III.

The Indoor Air Exclusion Does Not Exclude Coverage of a Sudden
Carbon Monoxide Leak.

¶18 An insurance policy is not only a contract,[29] but a contract of adhesion.[30] An adhesion contract is a standardized document prepared entirely by one party and presented on a "take it or leave it" basis.[31] Insurance contracts are contracts of adhesion because of the uneven bargaining power of the parties.[32] To limit liability under a policy, an insurer must employ language that clearly and distinctively reveals that which it limits.[33] If an insurance contract is ambiguous, the policy is construed most favorably to the insured and against the insurer.[34] More specifically, words of inclusion are liberally construed in favor of the insured, and words of exclusion are strictly construed against the insurer.[35] When interpreting an ambiguous provision, the meaning of the language is what a reasonable person in the position of the insured would have understood it to mean.[36] An insurance contract is ambiguous if it is susceptible to two interpretations from the standpoint of a reasonably prudent layperson.[37]

¶19 In Haworth v. Jantzen, 2006 OK 35, ¶ 1, 172 P.3d 193, this Court determined that an insurance policy was ambiguous and would be strictly construed against an insurer to provide coverage. The plaintiff's decedent was killed when his motorcycle was struck by the insured's pickup truck as the insured was backing out of a wheat field onto a state highway. The policy excluded coverage of (1) bodily injury arising out of the use of a land motor vehicle subject to motor vehicle registration owned and operated by an insured person and (2) bodily injury arising out of the use of a land motor vehicle if the bodily injury occurs away from the insured premises.[38] This Court concluded that the language was conflicting and ambiguous because an insured could reasonably interpret these provisions in multiple ways. The provisions could mean that bodily injury arising out of the use of a land motor vehicle is always excluded, only excluded if the vehicle is subject to registration, only excluded if the injury occurs away from the insured premises, or only excluded if the vehicle is not required to be registered and if the injury occurs away from the insured premises. Because the language of the exclusion was ambiguous, it was construed in favor of the insured to provide coverage.

¶20 Here, the Indoor Air Exclusion is likewise ambiguous because it is subject to multiple reasonable interpretations. Both interpretations put forth by the parties in this case are indeed reasonable. Again, the policy excludes coverage of:

"Bodily injury," "property damage," or "personal and advertising injury: arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause.

The hotel argues that the words "qualities or characteristics" limit coverage to an inherent and/or continuous attribute of the air quality. Under this interpretation, the provision would exclude injury arising from the development of mold, fungi, or some other ongoing condition of the air. In the hotel's view, because the carbon monoxide leak was sudden and isolated, it was not a quality or characteristic of the air. The word "quality" is defined as "an inherent feature."[39] It is therefore reasonable to conclude that a single and abrupt leak of carbon monoxide was not an inherent feature of the hotel's air and that consequently the Indoor Air Exclusion does not exclude coverage.

¶21 The interpretation proffered by the insurer is also reasonable. It, focusing on the words "regardless of cause," argues that the Indoor Air Exclusion does exclude coverage of one-time sudden infiltrations of carbon monoxide. Under its view, the carbon monoxide was a toxic characteristic of the indoor air caused by a sudden leak in the pool heater. This is a reasonable interpretation of the provision.

¶22 The Supreme Court of Nevada has already examined the same policy language in a suit involving the same insurer and already determined it ambiguous. It also determined that the policy language did not exclude coverage. Century Surety Co. v. Casino West, Inc., 329 P.3d 614 (Nev. 2014). In a strikingly similar case, the court was answering questions certified to it by the Ninth Circuit regarding interpretation of the Indoor Air Exclusion. Guests at the plaintiff hotel had died from carbon monoxide poisoning after a pool heater had malfunctioned, and the insurer denied coverage. The court concluded that the policy could be construed as excluding coverage for any injury caused by a problematic condition of the air regardless of whether it was temporary or permanent, or construed as excluding coverage for injury only if the problematic condition was permanent. Accordingly, the provision was deemed ambiguous and construed in favor of the hotel to provide coverage.

¶23 Similarly here, the provision is subject to more than one reasonable interpretation and is ambiguous.[40] It could reasonably be interpreted as applying only to continuous air conditions or to both sudden and continuous air conditions. Because the provision is ambiguous, it will be construed in favor of the insured and words of exclusion will be strictly construed against the insurer.[41] The meaning of the language is what a reasonable person in the position of the insured would have understood it to mean.[42] Construing the provision in favor of the hotel, the Indoor Air Exclusion is limited to latent defects in the air, that is, to inherent characteristics of the air rather than sudden, isolated leaks. A reasonable person in the position of the hotel could have read the provision and understood it to apply only to mold, fungi, or some other ongoing condition of the air. Because the carbon monoxide leak in the present case was sudden, isolated, and temporary, the Indoor Air Exclusion does not exclude coverage of the resulting injuries. Because the Indoor Air exclusion did not exclude coverage, we need not address whether its enforcement would be prohibited by the strong public policy of the state.

Conclusion

¶24 The initial question posed by the United States District Court for the Western District addressed whether Oklahoma public policy would prevent enforcement of the Indoor Air Exclusion. Before that question could be answered, it was necessary to determine what the Indoor Air Exclusion excluded. The reach of the Indoor Air Exclusion is subject to multiple reasonable interpretations; it could arguably apply to either only permanent conditions of the air, or both temporary and permanent conditions of the air. Because the provision is subject to multiple interpretations and consequently ambiguous, it is properly construed against the insurer. Accordingly, the Indoor Air Exclusion does not exclude coverage of bodily injury resulting from sudden, accidental leaks of carbon monoxide.

FOOTNOTES

[1] Siloam Springs Hotel, L.L.C. v. Century Sur. Co., CIV-13-572-M, 2014 WL 1924106 (W.D. Okla. May 14, 2014).

[2] Hollaway v. UNUM Live Ins. Co. of America, 2003 OK 90, ¶15, 89 P.3d 1022; Bogart v. CapRock Communications Corp., 2003 OK 38, ¶13, 69 P.3d 266; Akin v. Missouri Pacific Railroad Co., 1998 OK 102, ¶30, 977 P.2d 1040; United States v. Home Fed. S. & L. Ass'n of Tulsa, 1966 OK 135, ¶18, 418 P.2d 319; A.L. Lockhart v. Fretwell, 506 U.S. 364, 376, 113 S.Ct. 838, 846, 122 L.Ed.2d 180 (1993) (Thomas, J., concurring) ("The Supremacy Clause demands that state law yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation."). See, also, Steffel v. Thompson, 415 U.S. 452, 482, n.3, 94 S.Ct. 1209, 1227, n.3, 39 L.Ed.2d 505 (1974) (Rehnquist, J., concurring); United States ex rel. Lawrence v. Woods, 432 F.2d 1072, 1076 (7th Cir. 1970), cert. denied, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971).

[3] Insurance Co. of North America v. Welch, 1915 OK 914, ¶8, 154 P. 48.

[4] United States Department of the Treasury v. Fabe, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).

[5] Sunray DX Oil Company v. Cole, 1967 OK 242, ¶18, 461 P,2d 305; Landowners, Oil and Gas Royalty Owners v. Oklahoma Corporation Commission, 1966 OK 225, ¶10, 420 P.2d 542.

[6] Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233 (10th Cir. 2015).

[7] Title 20 O.S. 2011 §1602 provides that:

Power to Answer. The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.

[8] Order Certifying Question to the Oklahoma Supreme Court, March 21, 2016, p.2.

[9] E.g., Ball v. Wilshire Ins. Co., 2009 OK 38, ¶ 1, 221 P.3d 717; Tyler v. Shelter Mut. Ins. Co., 2008 OK 9, ¶ 1, 184 P.3d 496; McQueen, Rains & Tresch, LLP v. Citgo Petroleum Corp., 2008 OK 66, ¶ 1, 195 P.3d 35; McClure v. ConocoPhillips Co., 2006 OK 42, ¶ 1, 142 P.3d 390; Strong v. Laubach, 2004 OK 21, ¶ 1, 89 P.3d 1066; Hollaway v. UNUM Life Ins. Co. of Am., 2003 OK 90, ¶ 2, 89 P.3d 1022.

[10] Howard v. Zimmer, Inc., 2013 OK 17, ¶ 1, n.5, 299 P.3d 463; Jones v. Univ. of Cent. Okla., 1995 OK 138, ¶ 5, 910 P.2d 987.

[11] Title 20 O.S. 2011 §1602, see note 3, supra.

[12] Hollaway v. UNUM Life Ins. Co. of Am., 2003 OK 90, ¶ 2, 89 P.3d 1022.

[13] "Whether Blake Bogdahn was a person insured under the uninsured motorist provisions of the American Economy policy issued to Hillcrest Pharmacy, Inc. as the named insured?"

[14] "Is the definition of an insured in the UM endorsement of the American Economy policy issued to Hillcrest Pharmacy, Inc. ambiguous, such that the doctrine of reasonable expectations can be applied to define Blake Bogdahn as an insured?" And, "[i]f so, does the statutorily mandated UM selection/rejection form create a reasonable expectation of coverage for Blake Bogdahn, such that the policy must be reformed to provide such coverage?"

[15] Compare Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997 (4th Cir. 1998) (concluding that an insurance policy exclusion barred coverage for injuries due to a carbon monoxide leak), with Reg'l Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494 (10th Cir. 1994) (concluding that a similar insurance policy exclusion did not bar coverage for injuries due to a carbon monoxide leak).

[16] In re Idleaire Techs. Corp., 08-10960(KG), 2009 WL 413117, at *4 (Bankr. D. Del. Feb. 18, 2009).

[17] In re Idleaire Techs. Corp., at *4.

[18] Doerr v. Mobil Oil Corp., 774 So. 2d 119, 126 (La. 2000).

[19] Doerr, 774 So. 2d at 126.

[20] In re Idleaire Techs. Corp., at *5.

[21] Sulphuric Acid Trading Co., Inc. v. Greenwich Ins. Co., 211 S.W.3d 243, 250 (Tenn. Ct. App. 2006) (quoting J. Stempel, Interpretation of Insurance Contracts: Law and Strategy for Insurers and Policyholders 825 (1994)).

[22] Sulphuric Acid Trading Co., Inc., 211 S.W.3d at 250.

[23] Sulphuric Acid Trading Co., Inc., 211 S.W.3d at 250.

[24] Sulphuric Acid Trading Co., Inc., 211 S.W.3d at 250.

[25] In re Idleaire Techs. Corp., at *5.

[26] In re Idleaire Techs. Corp., at *5.

[27] This Court considered such a case involving the application of a total pollution exclusion to lead poisoning in a kidney dialysis center. Bituminous Cas. Corp. v. Cowen Const., Inc., 2002 OK 34, ¶ 3, 55 P.3d 1030.

[28] In re Idleaire Techs. Corp., at *6.

[29] Haworth v. Jantzen, 2006 OK 35, ¶ 13, 172 P.3d 193; American Economy Ins. Co. v. Bogdahn, 2004 OK 9, ¶ 8, 89 P.3d 1051; Spears v. Shelter Mutual Ins.Co., 2003 OK 66, ¶ 4, 73 P.3d 865. Brown v. Patek, 2007 OK 16, ¶11, 157 [Edmondson, J., writing for a majority of the court noted in fn. 8 that: Generally, the rules of construction governing the interpretation of contracts apply when construing obligations created by an insurance contract; and an insurance policy, a contract of adhesion, is construed to give reasonable effect to its provisions. Dodson v. St. Paul Ins. Co., 1991 OK 24, 812 P.2d 372, 376; National Life & Acc. Ins. Co. v. Cudjo, 1956 OK 305, 304 P.2d 322, 325. See also May v. Mid-Century Ins. Co., 2006 OK 100, ¶ 22, 151 P.3d 132, 140 (The rules of construction and analysis applicable to contracts govern equally insurance policies). A contract consists not only of its express language, but also of the obligations that are reasonably implied. Wright v. Fidelity & Deposit Co. of Md., 1935 OK 1215, 54 P.2d 1084, 1087. See 15 O.S. 2001 § 172. P.3d 117.]

[30] Max True Plastering Co. v. U.S. Fid. & Guar. Co., 1996 OK 28, ¶ 7, 912 P.2d 861; Wilson v. Travelers Ins. Co., 1980 OK 9, ¶ 8, 605 P.2d 1327.

[31] Max True Plastering Co., 1996 OK 28, ¶ 7; Rodgers v. Tecumseh Bank, 1988 OK 36, ¶ 14, 756 P.2d 1223.

[32] Max True Plastering Co., 1996 OK 28, ¶ 7; Wilson, 1980 OK 9, ¶ 8.

[33] Haworth, 2006 OK 35, ¶ 17; Spears, 2003 OK 66, ¶ 7; Max True Plastering Co., 1996 OK 28, ¶ 7.

[34] Littlefield v. State Farm Fire & Cas. Co., 1993 OK 102, ¶ 7, 857 P.2d 65; Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 13 , 812 P.2d 372; Wilson v. Travelers Ins. Co., 1980 OK 9, ¶ 8, 605 P.2d 1327.

[35] Haworth, 2006 OK 35, ¶ 17; Spears, 2003 OK 66, ¶ 5; Simpson v. Farmers Ins. Co., Inc., 1999 OK 51, ¶ 10, n.4., 981 P.2d 1262.

[36] Am. Econ. Ins. Co. v. Bogdahn, 2004 OK 9, ¶ 9, 89 P.3d 1051; Max True Plastering Co., 1996 OK 28, ¶ 2.

[37] Haworth, 2006 OK 35, ¶ 13; Spears, 2003 OK 66, ¶ 9; Cranfill v. Aetna Life Ins. Co., 2002 OK 26, ¶ 8, 49 P.3d 703.

[38] EXCLUSIONS Under PERSONAL LIABILITY--COVERAGE G and MEDICAL PAYMENTS TO OTHERS--COVERAGE H, we do not cover:

1. Bodily injury or property damage arising out of the ownership, maintenance, use or negligent entrustment of: ...

b. land motor vehicles subject to motor vehicle registration owned or operated or rented or loaned to an insured person ...

c. land motor vehicles, other than golf carts while used for golfing, if the bodily injury or property damage occurs away from the insured premises ...

[39] http://www.merriam-webster.com/dictionary/quality.

[40] Haworth, 2006 OK 35, ¶ 13; Spears, 2003 OK 66, ¶ 9; Cranfill v. Aetna Life Ins. Co., 2002 OK 26, ¶ 8, 49 P.3d 703.

[41] Haworth, 2006 OK 35, ¶ 17; Spears, 2003 OK 66, ¶ 5; Simpson v. Farmers Ins. Co., Inc., 1999 OK 51, ¶ 10, n.4., 981 P.2d 1262.

[42] Am. Econ. Ins. Co. v. Bogdahn, 2004 OK 9, ¶ 9, 89 P.3d 1051; Max True Plastering Co., 1996 OK 28, ¶ 2.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2000 OK 94, 24 P.3d 821, 71 OBJ 3219, HARKRIDER v. POSEY
Discussed at Length
 1987 OK 88, 743 P.2d 1084, 58 OBJ 2673, Young v. Mid-Continent Cas. Co.
Discussed
 1987 OK 121, 747 P.2d 947, 58 OBJ 3434, Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.
Discussed
 1988 OK 36, 756 P.2d 1223, 59 OBJ 956, Rodgers v. Tecumseh Bank
Discussed
 1989 OK 22, 770 P.2d 24, 60 OBJ 305, Burk v. K-Mart Corp.
Discussed at Length
 1941 OK 371, 119 P.2d 815, 189 Okla. 692, CAMP v. BLACK GOLD PETROLEUM CO.
Discussed
 1991 OK 24, 812 P.2d 372, 62 OBJ 802, Dodson v. St. Paul Ins. Co.
Discussed at Length
 1993 OK 102, 857 P.2d 65, 64 OBJ 2335, Littlefield v. State Farm Fire and Cas. Co.
Discussed
 2001 OK 15, 39 P.3d 765, 72 OBJ 562, HARTLINE v. HARTLINE
Discussed
 1947 OK 232, 184 P.2d 965, 199 Okla. 143, CAMERON & HENDERSON Inc. v. FRANKS
Discussed at Length
 1915 OK 914, 154 P. 48, 49 Okla. 620, INSURANCE CO. OF NORTH AMERICA v. WELCH
Discussed
 1994 OK 54, 880 P.2d 877, 65 OBJ 1837, Nation v. State Farm Insurance Co.
Discussed
 1997 OK 14, 934 P.2d 328, 68 OBJ 583, City of Anadarko v. Fraternal Order of Police, Lodge 118
Discussed
 2001 OK 52, 29 P.3d 543, 72 OBJ 1933, CLINTON v. STATE ex. rel. LOGAN COUNTY ELECTION BD.
Discussed
 1945 OK 123, 157 P.2d 755, 195 Okla. 341, JOHNSTON v. J. R. WATKINS CO.
Discussed
 1956 OK 305, 304 P.2d 322, NATIONAL LIFE AND ACCIDENT INSURANCE CO. v. CUDJO
Discussed
 1935 OK 1215, 54 P.2d 1084, 176 Okla. 274, WRIGHT V. FIDELITY & DEPOSIT CO. OF MARYLAND
Discussed
 1962 OK 197, 375 P.2d 873, AMERICAN IRON & M. WKS. v. INSURANCE CO. OF N. AM.
Discussed
 1966 OK 135, 418 P.2d 319, UNITED STATES v. HOME FED. S. & L. ASS'N OF TULSA
Discussed
 1966 OK 225, 420 P.2d 542, LANDOWNERS, OIL, GAS & ROY. OWN. v. CORP. COM'N
Discussed
 2002 OK 26, 49 P.3d 703, CRANFILL v. AETNA LIFE INS. CO.
Discussed at Length
 2002 OK 34, 55 P.3d 1030, BITUMINOUS CASUALTY CORP. v. COWEN CONSTRUCTION, INC.
Discussed at Length
 2002 OK 35, 49 P.3d 710, IN RE HARRIS
Discussed at Length
 1967 OK 242, 461 P.2d 305, SUNRAY DX OIL COMPANY v. COLE
Cited
 1995 OK 99, 904 P.2d 604, 66 OBJ 3071, City of Bethany v. Public Employees Relations Bd. of State of Okl.
Discussed
 1995 OK 138, 910 P.2d 987, 66 OBJ 3897, Jones v. University of Central Oklahoma
Discussed at Length
 2003 OK 38, 69 P.3d 266, BOGART v. CAPROCK COMMUNICATIONS CORP.
Discussed
 2003 OK 66, 73 P.3d 865, SPEARS v. SHELTER MUTUAL INSURANCE COMPANY
Discussed at Length
 2003 OK 77, 78 P.3d 93, HAMMOCK v. UNITED STATES
Discussed
 2003 OK 90, 89 P.3d 1022, HOLLAWAY v. UNUM LIFE INSURANCE CO. OF AMERICA
Discussed at Length
 2004 OK 1, 84 P.3d 728, SILVER v. CPC-SHERWOOD MANOR, INC.
Discussed
 2004 OK 9, 89 P.3d 1051, AMERICAN ECONOMY INSURANCE COMPANY v. BOGDAHN
Discussed at Length
 2004 OK 21, 89 P.3d 1066, STRONG v. LAUBACH
Discussed
 1996 OK 28, 912 P.2d 861, 67 OBJ 806, Max True Plastering Co. v. U.S. Fidelity and Guar. Co.
Discussed at Length
 2005 OK 93, 127 P.3d 611, SCOTTSDALE INSURANCE COMPANY v. TOLLIVER
Discussed
 1996 OK 29, 912 P.2d 871, 67 OBJ 873, Schmidt v. U.S.
Discussed
 2006 OK 35, 172 P.3d 193, HAWORTH v. JANTZEN
Discussed at Length
 2006 OK 42, 142 P.3d 390, MCCLURE v. CONOCOPHILLIPS COMPANY
Discussed at Length
 2006 OK 100, 151 P.3d 132, MAY v. MID-CENTURY INSURANCE COMPANY
Discussed
 2007 OK 16, 157 P.3d 117, BROWN v. PATEL
Cited
 2007 OK 80, 184 P.3d 463, BALL v. WILSHIRE INSURANCE COMPANY
Discussed
 2008 OK 1, 176 P.3d 1204, DARROW v. INTEGRIS HEALTH, INC.
Discussed
 2008 OK 9, 184 P.3d 496, TYLER v. SHELTER MUTUAL INSURANCE CO.
Discussed at Length
 2008 OK 35, 186 P.3d 928, VASEK v. BOARD OF COUNTY COMMISSIONERS
Discussed at Length
 2008 OK 66, 195 P.3d 35, McQUEEN, RAINS & TRESCH, LLP v. CITGO PETROLEUM CORP.
Discussed at Length
 1996 OK 102, 925 P.2d 60, 67 OBJ 2955, Cray v. Deloitte Haskins & Sells
Discussed
 2008 OK 105, 202 P.3d 144, KRUCHOWSKI v. THE WEYERHAEUSER CO.
Discussed
 2009 OK 38, 221 P.3d 717, BALL v. WILSHIRE INSURANCE CO.
Discussed at Length
 2011 OK 88, 264 P.3d 1245, GOVERNMENT EMPLOYEES INSURANCE CO. v. QUINE
Discussed at Length
 2013 OK 17, 299 P.3d 463, HOWARD v. ZIMMER, INC.
Discussed at Length
 1974 OK 147, 534 P.2d 1293, WILEY v. TRAVELERS INSURANCE COMPANY
Discussed at Length
 1980 OK 9, 605 P.2d 1327, Wilson v. Travelers Ins. Co.
Discussed at Length
 1976 OK 195, 558 P.2d 400, TORRES v. SENTRY INSURANCE
Discussed
 2016 OK 28, 376 P.3d 894, MOORE v. WARR ACRES NURSING CENTER, LLC.
Cited
 1928 OK 268, 270 P. 854, 133 Okla. 23, ANDERSON v. REED
Discussed
 1997 OK 120, 947 P.2d 177, 68 OBJ 3102, GRIFFIN v. MULLINIX
Discussed
 1998 OK 102, 977 P.2d 1040, 69 OBJ 3512, Akin v. Missouri Pacific Railroad Co.
Discussed
 1999 OK 51, 981 P.2d 1262, 70 OBJ 1813, Simpson v. Farmers Insurance Co., Inc.
Discussed at Length
 1894 OK 34, 37 P. 807, 2 Okla. 476, People's Bank v. Dalton
Discussed
 1983 OK 103, 678 P.2d 250, Shepard v. Farmers Ins. Co., Inc.
Discussed at Length
 1985 OK 38, 706 P.2d 523, Mercury Inv. Co. v. F.W. Woolworth Co.
Discussed
 1985 OK 40, 713 P.2d 1027, 56 OBJ 1252, Hall v. Farmers Ins. Exchange
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 172, Necessary or Incidental Things to be Implied
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 1602, Power to Answer
Discussed at Length
 20 O.S. 1602.1, Power to Reformulate Question
Discussed
 20 O.S. 1604, Contents of Certification Order
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 7-600, Definitions
Cited